Herbert A. O ’Brieít, J.
This is a proceeding brought on behalf of an infant “ step child ” by a paternal aunt. The facts are as follows:
One Louis Gritlin, a widower, father of a child by a former marriage, married the respondent in November, 1929. At the time of the marriage the child was in her fifth year.
Since the birth of the child she has resided with her paternal aunt, the petitioner Mrs. Grlowsky. She still resides with her. The child is now 16 years of age. She is being supported by the Department of Public Welfare of the City of New York under the Board of Child Welfare.
The petitioner testified that after the marriage of Gritlin to the respondent herein, she called upon the respondent and her brother to demand support for the child. She was not allowed to enter the threshold of the home of the child’s father and his new wife.
Five years later the child’s aunt again called at the home of the respondent and asked her to take the child to live with her. Respondent declined to do so.
Yetta Stein, a sister of Louis Gritlin, testified she was at the wedding but later on admitted that none of the Gritlin family were present on that occasion. She said that ‘ ‘ her brother and his wife ” (the respondent herein) came to her house.
Questioned about what the respondent said at that meeting which she said took place the day after the wedding, the witness was asked and answered this question:
“ The Court: What did Mrs. Gritlin say — the new Mrs. Gritlin?
“Witness: She didn’t say anything.”
*770 Later on the witness made these answers to questions:
“ Q. What did she say and what- did you say? A. She was perfectly satisfied.
“ Q. What did she say? A. She says she wants the child.
“ Q. Did she take the child? A. I don’t know what happened after that, but she was perfectly satisfied.
“ Q. Did she take the child? A. She didn’t take the child.” (Italics those of the court.)
The respondent on the other hand testified that she did not know of the existence of the child until two months after her marriage to the child’s father. The absence of the father’s family from the wedding is significant.
Ray G-itlin, another sister of the child’s father, testified that she listened to conversations between the witness’ father and mother and the child’s father about taking the child home to the child’s father’s house. This witness herself had no conversation with her brother or his new wife (respondent) about the child.
Subdivision 5 of section 101 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482, as amd.) took effect October 1, 1933. It reads as follows: “ The step parent of a child is hereby declared legally chargeable with the support of a step child likely to become a public charge provided it is shown to the satisfaction of the court that such step parent had knowledge of the child’s existence at the time of said step parent’s marriage.”
That section predicates liability of a stepparent for support of a stepchild upon the knowledge of its existence, and that such evidence offered to prove knowledge by the stepparent of the existence of the stepchild, must be of such character, as to satisfy this court that the stepparent had such knowledge at the time of the marriage. The record is bare of any evidence of knowledge by the respondent of the existence of the child.
Moreover, since the child is a public charge and is now supported by the Department of Public Welfare of the City of New York, all proceedings for support of stepchildren are controlled by the Public Welfare Law (art. XY, §§ 125, 126).
Under section 126 [as amd. by L. 1932, ch. 482] “ The public welfare official who is responsible for the administration of the relief granted” is the one authorized to bring this proceeding, and not the petitioner.
Moreover, since the Public Welfare Law and the Domestic Relations Court Act, containing the provision for support of stepchildren, were both enacted after the marriage of the child’s father to the respondent, the operation of these laws is not retroactive. (Matter of Kane v. Necci, 245 App. Div. 1.)
*771 In the Necci case (supra), Mr. Justice Carswell sounded the princible upon which all family relations are founded, namely, that a moral obligation is the genesis of a legal one.
The term stepparent as used in the statute can only mean “ stepfather.” To include a stepmother within the statutory term of a stepparent, in a law requiring and enforcing the obligation of support of a stepchild, is without the necessary foundation of moral law.
Such an interpretation does violence to the course consistently held throughout the ages. And any law which might in express terms charge a female stepparent with responsibility for such support, coupled with compulsion and penalties for failure to furnish such support, transgresses the inalienable rights of women and the career of motherhood, predestined by Divine Providence and acknowledged by all civilized races in historic, unbroken and successive continuity.
Man alone by economic status and opportunity, by physique, by temperament, by common agreement and by an unerring human instinct has been assigned and has assumed the character of breadwinner. The economic inequality, social and physical limitations of women sustain this basic fact.
Marriage is not a right conferred by government. It existed before any government. Inalienable from the nature of man, not conferred, but endowed by the Creator. No law may fasten upon a woman the burden of support of a stepchild or enforce it without grave injury to the social structure.
The moral and spiritual structure as God and Nature have created it, retains its original plan and contour. It survives and surmounts the futile efforts of Legislatures and Government to change it.
To hold a stepmother liable for the support of stepchildren places an incumbrance and penalty on marriage itself. It creates a handicap and a burden and a penalty upon the female, unauthorized in the history of the human race. Holy Writ while recording outstanding examples of noble women assuming the duty of “ rearing ” children is barren of any recorded instance of the obligation of “compulsory” support by a wife, of the children of another.
The failure to show knowledge by the respondent of the existence of the child at the time of her marriage to the child’s father makes any proceeding to fasten such responsibility upon her fruitless.
The petition is accordingly dismissed. , . .