Chief Judge Conway.
This case presents the question whether a stepmother may be compelled to contribute to the expense incurred by the City of New York because of the maintenance of her stepson, who is a public charge having been committed to a school for delinquents, it appearing (a) that the stepmother had knowledge of the child’s existence at the time of her marriage to the child’s father and (b) that the father had been ordered to contribute to the child’s support but the amount so ordered to be paid was insufficient to reimburse the city in full.
The essential facts are undisputed. The respondent and her husband, Joseph Siebel, were married on August 7, 1953. The boy, also named Joseph Siebel, was born on March 27, 1943, so that he was 10 years and 4 months old at the time of the marriage. On or about November 1, 1957 (the boy was then 14 years and 8 months old), the boy was adjudicated delinquent by the Children’s Court Division of the Domestic Relations *539 Court, Queens County, and committed to the care and custody of Cedar Knolls School, Hawthorne, New York, at a cost of $49 a week to the City of New York.
The present proceeding was instituted by petition of the appellant Department of Welfare of the City of New York dated December 3, 1957. The prayer for relief was that “in accordance with the provisions of Chapter 482, Laws of 1933, as amended by Chapter 671, Laws of 1940, (Section 56-A), process of this Court be issued requiring the said Margaret Jeffrey Siebel to appear before this Court to be examined as to her ability to contribute in whole or in part toward the support of said child—while in the care and custody of said association, agency, society or institution [Cedar Knolls School] * *
After the filing of the petition a summons was issued by an administrative officer of the court, directing the respondent to appear before the court to be examined as to her ability to support her nearly 15-year-old stepchild. On January 7, 1958 the respondent was examined by the court and an order was that day entered requiring the respondent to pay the sum of $20 per month toward the support of the stepchild, retroactive to November 1, 1957.
The father of the child was also required to pay $22.50 per week for the child’s support, commencing January 1, 1958. On appeal by the respondent, the Appellate Division reversed, two Justices dissenting.
On this appeal the Department of Welfare argues that (1) the order of support was authorized by the applicable statutes which, when read together, evince a legislative intent that contribution towards the expense incurred by the City of New York in maintaining a child in an institution may be compelled simultaneously from more than one person legally chargeable for the child’s support, including a stepmother, at least where the father is unable to pay the full cost, (2) even if relatives are liable for support in a particular order of succession obtaining less than full contribution from a father, said to be primarily liable, does not exhaust power to proceed against a stepmother, even if only secondarily liable, for the whole or part of the balance, and (3) there is no merit to contentions that under the statutes prior recourse must be had to grandparents before *540 resorting to stepparents, or that “step parent” does not include “ step mother ”, or that the Domestic Relations Court Act does not afford procedural due process.
The respondent, on her part, contends that (a) section 56-a should be strictly construed and that here a stepmother’s liability is precluded since the parent has been held liable under a support order; (b) article 4 of title III of the Domestic Relations Court Act is unconstitutional; (c) the statute does not contemplate charging a stepmother with support of a stepchild ; (d) the liability of a stepparent is quaternary (fourth in line); and (e) none of the allegations contained in the petition has been proven.
Section 56-a of the Domestic Relations Coqrt Act of the City of New York, pursuant to which this proceeding was instituted, reads in pertinent part: “Duties of city department of welfare and city department of health with respect to compelling support.
1. Upon the remand or commitment of a child to a public or private institution other than a shelter maintained and conducted by a society for the prevention of cruelty to children, the department of welfare of the city of New York shall investigate the ability of the parent of the child, or other person legally chargeable, to contribute in whole or in part to the expense incurred by the city of New York on account of the maintenance of such child.
2. If in the opinion of the department of welfare such parent or legal custodian is able to contribute in whole or in part the commissioner of welfare shall thereupon institute a proceeding in the family court of the domestic relations court of the city of New York to compel such parent or other person legally chargeable to contribute such portion of such expense on account of the maintenance of such child as shall be proper and just and the domestic relations court of the city of New York is vested with jurisdiction in the premises.
3. * * (Emphasis added.)
Section 92 of the Domestic Relations Court Act of the City of New York, entitled “ Powers ”, provides, in part that:
‘ ‘ In the exercise of its jurisdiction the court shall have power * * *
*541 To order support of a stepchild by the persons legally chargeable therewith up to the age of seventeen years, subject to the limitations of subdivision five of section one hundred and one. * * * ” (Emphasis added.)
It will be observed that section 56-a provides merely that the Department of Welfare may institute a proceeding to compel support from the child’s parent “ or other person legally chargeable ” with the child’s support and that section 92 provides merely that the court has jurisdiction “ [t]o order support of a stepchild by the persons legally chargeable therewith * * Nowhere do either of those sections enumerate the persons who are “legally chargeable ” with the support of a stepchild. For that, one must look to section 101 of the Act. That section reads:
“ Section 101. Legal liability for support.
1. A husband is hereby declared to be chargeable with the
support of his wife and children and if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court. * * *
2. Where the father of a child is dead or is incapable of supporting his child or cannot be found within the state, the mother of such child is hereby declared to be chargeable with its support and if possessed of sufficient means or able to earn such means, may be required to pay for its support a fair and reasonable sum according to her means, as may be determined by the court.
3. Where the father of a child included in a petition for support is dead, or where the court, in its judgment, is unable to secure adequate support for such child from its parents, and the child’s grandparents are of sufficient means to support it, said grandparents are hereby declared to be chargeable with the support of such grandchild and may be required to pay a fair and reasonable sum according to their means, as may be determined by the court.
4. * * *
5. The step parent of a child is hereby declared legally chargeable with the support of a step child likely to become a public *542 charge provided it is shown to the satisfaction of the court that such step parent had knowledge of the child’s existence at the time of said step parent’s marriage.
g * * * >}
The foregoing statutes may be summarized as follows:
(1) The father is primarily and unconditionally liable for the support of his child;
(2) The mother is liable, but conditionally, the conditions being (a) that the father of the child is dead, or (b) is incapable of supporting his child, or (c) is out of the State;
(3) The grandparents are liable, but conditionally, the conditions being (a) that the father is dead, or (b) that the court is unable to secure adequate support for the child from its parents.
In the case of each of the above persons, the liability for support is enforcible if the person is possessed of sufficient means.
(4) A stepparent is legally chargeable with the support of a stepchild, but conditionally, the conditions being (a) that the child is likely to become a public charge and (b) that the stepparent have had a knowledge of the child’s existence at the time of said stepparent’s marriage.
The first of the two conditions precedent to a stepparent’s liability for support exists here, viz., that the child “is likely to become a public charge.” The child here is in a home for delinquents and is being supported by the City of New York. What is more, the respondent does not contend that the first condition does not obtain. The second condition, viz., that the stepparent have had knowledge of the child’s existence at the time of said stepparent’s marriage also exists here (respondent herself so testified). The two conditions being present, respondent makes the argument that the term “ step parent” means ‘ ‘ step father ’ ’ and that even if ‘1 step parent ’ ’ is read to include a “ step mother ” she is not liable for support here since a stepparent’s liability is fourth in line and does not come into being at all until there is proof of the inability of the blood relatives (i.e., the mother and the grandparents of the child) to pay.
In support of her argument that ‘ ‘ step parent ’ ’ means “ step father ” the respondent relies upon dictum in the case *543 of Matter of Glowsky v. Gitlin (16 Misc 2d 768, 771) the thrust of which was: ‘ ‘ The term stepparent as used in the statute can only mean ‘ stepfather. ’ To include a stepmother within the statutory term of a stepparent, in a law requiring and enforcing the obligation of support of a stepchild, is without the necessary foundation of moral law.”
Quite apart from the fact that this is a dictum of a lower court, and as such is not binding on this court, the statement is unsound. It can hardly be argued that every statute must find its foundation or basis in moral law. Many statutes have no relationship to moral principles. For example, many acts have been made crimes by legislative enactment not because the acts transgress moral law but simply because the Legislature in its wisdom has chosen to classify them as such. These are the crimes described as ‘ ‘ mala prohibita ’ ’ and 1 ‘ are crimes only because they are prohibited by statute.” (22 C. J. S., Criminal Law, § 8.) So, too, the Legislature is free —if it is so disposed—to burden a stepmother with the support of her stepchild, without having to find some justification in moral law for its action. The question which remains is: “ Has the Legislature done so?” In my judgment that question can only be answered in the affirmative. Legislative intent is to be determined primarily from the language used in the act under consideration. Here the word chosen by the Legislature was “ step parent ”, not “ step father ”, although the latter word was certainly available. We are not at liberty to restrict by conjecture, or under the guise or pretext of interpretation, the meaning of the phrase selected.
This brings us to that which may be described as the main issue in the case, viz., whether contribution may be compelled simultaneously from more than one person legally chargeable for the child’s support including a stepmother, at least where the father is unable to pay the full balance.
As stated above, according to section 101 of the Domestic Relations Court Act of the City of New York, a father is primarily and unconditionally liable for the support of his children; a mother is liable, but only (1) where the father of the child is dead, or (2) is incapable of supporting his child, or (3) is out of the State; and grandparents are liable, but only (1) where the father is dead, or (2) where the court is unable to *544 secure adequate support for the child from its parents. Finally, a stepparent is legally chargeable with the support of a stepchild (1) if the child is likely to become a public charge and (2) the stepparent had knowledge of the child’s existence at the time of said stepparent’s marriage.
We have already pointed out that the two conditions precedent to a stepparent’s liability exist here and that respondent does not argue to the contrary. Doubtless, a reading of section 101 discloses a legislative intention to make the father' of a child the one who has the primary duty of its support. However, if the father is incapable of supporting his child — and we think it reasonable to conclude that a father is incapable of supporting his child within the meaning of the statute if he is unable to pay the full amount needed to support the child—the liability of other persons comes into existence. There is nothing in section 101 to suggest that so long as the father can afford as little as one dollar towards the support of his child that no one else is obligated to contribute thereto and we should not read such a meaning into the statute for we would produce an anomalous result if we were to do so. The evident object of the statute is to assure the child of support. The father has been made primarily liable for such support. If he fails, the liability of the mother, the grandparents and the stepparent arises. The statute does not enumerate the order in which these other persons become liable inter se and a fair reading of the statute is that they have all been made “ secondarily liable.” The majority and dissenting Justices in the Appellate Division all agreed that the father of a child is primarily responsible and that the other persons legally chargeable are secondarily liable. Their difference was on the question of whether support can be required of one of those secondarily liable where an order of support has been entered against the father but such order is insufficient to provide the necessary support for the child. The majority, relying on the wording of section 56-a, held that as between the parent and the respondent, who is in the position of one secondarily liable, the liability is in the alternative. The dissenting Justices, on the other hand, said that: “ * * * In our opinion, section 56-a of the Domestic Delations Court Act must be read with subdivision (5) of section 92 of the same *545 statute, which, provides that the court may order support to such a stepchild by the persons legally chargeable therewith, subject to the limitations of subdivision 5 of section 101. The purpose of section 56-a appears to be to permit the Department of Welfare of the City of New York to compel those legally responsible for the support of a child committed for institutional care, to contribute to the expense incurred by the city in the maintenance of such a child according to their financial ability. * * * Although appellant may be only secondarily liable, she is nevertheless chargeable with the child’s support, to the extent which may be proper and just, in a proceeding such as this in which the father, primarily liable, is unable to contribute the full amount of the expense incurred and has been required to contribute such part thereof as has been determined to be just and proper in accordance with his ability. [Cases cited.] ”
We agree with the view taken by the dissenting Justices. Section 56-a provides for proceedings by the local Department of Welfare to compel contribution toward the city’s expenses in such cases, and vests jurisdiction of such proceedings in the Domestic Relations Court of the City of New York. Contribution is exacted from the parent “ or other person legally chargeable ” if it is found after investigation that ability to contribute in whole or in part exists.
The word “ or ” in the phrase quoted may be read as “ and ” to carry out the legislative intent (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 365). Section 56-a is procedural in nature. It relates to the remedy rather than to the right. Its very title refers to the duties of the Department of Welfare — that is, the procedures to be followed—with respect to compelling support. It grants a more expeditious remedy to the Department of Welfare in addition to the remedy by civil action available under section 104 of the Social Welfare Law. It would seem to follow that in considering whether the respondent is liable for support, and, therefore, contribution, under the circumstances of this case, we should consider primarily the scope and language of section 101 of the statute which gives rise to the Department of Welfare’s cause of action. In this view section 56-a, relating to the remedy or *546 the means by which the cause is enforced, is of secondary importance.
Respondent argues that article 4 of title III of the Domestic Relations Court Act of the City of New York, pursuant to which this proceeding was instituted, is unconstitutional. The respondent contends that the proceeding deprives her of property without due process. She asserts that the statute does not afford one an opportunity to interpose an answer to the department’s petition; that the allegations of the petition are assumed to be valid in every respect and, if they are not true, there is nothing the respondent can do about it; that the city has made, not merely a prima facie case, but a conclusive case, and the sole issue becomes one of determining how much the respondent can afford to pay and that the respondent’s only remedy is an appeal.
This argument is without substance. No answer or formal pleading by respondent was necessary; the allegations of the petition were to be established or disproved by evidence (Matter of Vendetti v. Vendetti, 16 Misc 2d 2). The respondent was represented by counsel, and had the right to cross-examine and to present evidence. That she chose to rest upon a legal argument which the court below did not accept certainly did not deprive her of a fair hearing.
At page 15 of her brief the respondent states that the ‘1 Petition herein, verified December 3, 1957, filed December 5, 1957, alleges that the respondent: ‘ refused or neglected to provide support for dependent child . . . for whose support you are legally chargeable.’ The record contains no evidence of refusal or neglect to provide support. ’ ’
An examination of the petition will disclose that the petition does not allege that the respondent “refused or neglected” to support the child. It alleges merely that she ‘1 failed * * * to do so ”. The contention that there was no proof of express refusal accordingly is moot. It may not be denied that prior to this proceeding the respondent had failed to provide any amount of support. Certainly that failure — and indeed even a refusal to support—may reasonably be inferred from her resistance to the making of an order in this proceeding.
Reference is made by respondent to the fact that the respondent and her husband are on the verge of a divorce. That fact *547 has no bearing on the validity of the support order here under review.
The order of the Appellate Division should be reversed and that of the Domestic Delations Court reinstated, without costs.