*440 OPINION OF THE COURT
Edward J. McLaughlin, J.
This case comes before the court on a motion to renew brought by the mother of a child born out of wedlock, pursuant to CPLR 5015. The present petitioner wishes to have the court’s dismissal of a paternity proceeding reconsidered. The prior proceeding was brought by the Commissioner of Social Services against an alleged putative father, and was terminated with prejudice, on the consent of both parties. Petitioner was not a party to that action. Petitioner alleges that she has newly discovered evidence that would discredit the information upon which the stipulation entered into by the Commissioner was based. She seeks, therefore, to reopen the Commissioner’s case.
The court is thus confronted with the issue of what, if any, are the legal rights of the mother of an out-of-wedlock child in a paternity proceeding brought against the alleged father of the child by the Commissioner of Social Services. The court concludes that pursuant to current State and Federal statutory law the mother has no legal rights to support for the child, having assigned such rights to the Commissioner of Social Services. The court also holds, however, that neither the mother nor the child are bound by the results of the Commissioner’s action. Petitioner’s motion to renew is denied.
I FACTS
The present petitioner gave birth to an out-of-wedlock child on January 20, 1977. She thereafter sought public assistance to support the child. As a condition precedent to receiving Aid to Dependent Children (ADC) benefits, she assigned her rights to support for her child from any other person to the Commissioner of the Onondaga County Department of Social Services (hereinafter Commissioner). (Social Services Law, § 349-b; 18 NYCRR 369.2.) On July 24, 1978, the Commissioner commenced a paternity action against the putative father pursuant to section 522 of the Family Court Act. The putative father denied paternity and demanded a blood-grouping test. (Family Ct Act, § 532.) The court-ordered blood test excluded him as the father of the child and the attorney representing the Commissioner stipulated to the accuracy of the results of that test. At the request of counsel for the putative father and with the consent of the Commissioner, the action was dis *441 missed with prejudice against the Commissioner. The mother, petitioner herein, was neither represented by counsel nor was she personally present at the time of the stipulated dismissal. Thereafter, the mother twice submitted her blood and the blood of the child for testing. These subsequent tests established, according to the mother, the total absence in the child’s blood of an antigen which, according to the results of the court-ordered test, was present in the child’s blood. If the results of the tests performed at the request of the mother are correct and the child in fact lacks the particular antigen, the basis of exclusion in the court-ordered test is seriously called into question. Based upon the results of the subsequent blood tests the mother requested the Commissioner to move to renew his action on the basis of newly discovered evidence. The Commissioner refused to so proceed. The mother now moves in her own name to renew the original action of the Commissioner based on the new evidence of the subsequent blood tests pursuant to CPLR 5015.
II LAW
A. Assignment of Support Rights
The dilemma in which the mother now finds herself has, as its genesis, section 602 (subd [a], par [26], cl [A]) of title 42 of the United States Code, which requires, as a condition precedent to receiving ADC benefits that the mother of an out-of-wedlock child assign to the State any "rights to support from any other person”. Having assigned her rights to the Commissioner, the mother was not a necessary party to the action commenced by the Commissioner, and ordinarily would be barred from renewing the action. (CPLR 1001, 4404; McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR 1001, at p 351; 3 NY Jur Assignments, § 61; 3 Carmody-Wait 2d, § 19:30; Whiting v Glass, 217 NY 333.)[1] Although not a necessary party, petitioner herein is clearly an interested person, for, as the mother of the out-of-wedlock child her future rights to support for that child from the putative father have been adversely affected by the stipulation *442 and dismissal of the paternity action. Equity, therefore, demands a careful examination of the rights of a mother of an out-of-wedlock child to obtain support for that child.

B. Paternity Proceedings Are Statutory Proceedings For Support.

Prior to England’s Poor Law Act of 1576 (Stat 18 Eliz, ch 3 [1576]), the onus of providing for illegitimate children fell upon the charity of the community through the parish. The increasing number of illegitimate children and the resulting increase in the financial burden to the parish prompted the enactment of the Poor Law Act and subsequent support statutes, all of which were directed at indemnifying the public by shifting the burden of support to the parents of the illegitimate child. (1 Schatkin, Disputed Paternity Proceedings, § 1.09.) This effort to indemnify the community from the funds of the natural parents necessitated a procedure for determining paternity, and from that effort the present day statutes governing paternity actions have evolved.
In New York, "[t]he common law did not make the father of a bastard liable for the support of either the mother or the child, and the liability * * * exists solely by virtue of the statutes * * * The proceedings by which the liability shall be determined and fixed are defined and controlled exclusively by the statutes”. (People ex rel. Lawton v Snell, 216 NY 527, 532.) The early paternity actions in New York were commenced by the County Superintendent of the Poor in criminal court. (Rheel v Hicks, 25 NY 289, 290, citing 1 Rev Stat 642, § 5 [1862].)*
[2] Later proceedings to establish paternity and thus to obtain support for the out-of-wedlock child, were conducted in both the Children’s Courts and the Court of Special Sessions (a criminal court) in New York City.[3] The Family Court *443 Act of 1962 consolidated the jurisdiction of these courts by granting the Family Court exclusive, original jurisdiction over paternity proceedings. (Family Ct Act, § 165; Matter of Harris vDoley, 22 AD2d 769.)* **[4]
Paternity proceedings in this State, then, "had their inception in the need for, and have until this time, been directed toward avoiding public expenditure in supporting and maintaining the illegitimate child, rather than as a means of judicially determining paternity: [paternity] assumed importance only as a means of determining the shoulders upon which the burden was to be imposed.” (Samuels, Family Court Law and Practice in New York [rev ed], § 237.) The legislative history of article 5 of the Family Court Act reveals that "a principal purpose of the proceeding is to resolve problems of support.” (Report of Joint Legis Committee on Court Reorganization, No. 2, The Family Court Act, McKinney’s Session Laws of NY, 1962, p 3446; Matter of J., 50 AD2d 890; Matter of Kehn v Mainella, 40 Misc 2d 55.)
It has been stated that filiation proceedings are primarily concerned with the welfare of the child. (Schaschlo v Taishoff, 2 NY2d 408, 411.) Such welfare, however, is the financial benefit to the child of support. (Schaschlo v Taishoff, supra.) Thus, when considering the benefit to the child as well as the right of the mother, the ultimate issue, in a paternity proceeding is support. (Commissioner of Public Welfare v Koehler, 284 NY 260.)

C. Jurisdiction of the Court

The limited purpose of a paternity proceeding in the Family Court, that of obtaining support, is reflected in the limited jurisdiction of the court. While section 511 of the Family *444 Court Act grants the Family Court exclusive, original jurisdiction over proceedings "to establish paternity and, in any such proceedings in which it makes a finding of paternity, to order support”, section 114 of the Family Court Act clearly limits the grant of jurisdiction by providing that the Family Court Act "shall in no way limit or impair the jurisdiction of the supreme court”. The seeming inconsistency has been conclusively resolved by the Court of Appeals ruling that "whenever the Legislature created a cause of action unknown at common law, jurisdiction to entertain this action vested in the Supreme Court unless this jurisdiction was specifically proscribed * * * [and] the Supreme Court is a court of original, unlimited and unqualified jurisdiction” (Kagen v Kagen, 21 NY2d 532, 536, 537).[5]
The limited purpose of a paternity proceeding pursuant to article 5 of the Family Court Act and the limited jurisdiction of the Family Court are revealed in the nature of the judgment itself. An order of filiation from the Family Court is not a judgment in rem but a judgment in personam. (Samuels, Family Court Law and Practice in New York [rev ed], § 241; 1 Sachatkin, Disputed Paternity Proceedings [4th ed], § 15.17; cf. State v Morrow, 75 P2d 737, 744 [Ore].) "The child is not a necessary party to the proceedings * * * The order made in such a proceeding does not constitute an adjudication * * * It does not establish the status of the child”. (Commissioner of Public Welfare v Koehler, supra, at p 267; see, also, Matter of Salvatore S. v Anthony S., 58 AD2d 867; Matter of Alvin B. v Denise C, 85 Misc 2d 413.) Indeed, the United States Supreme Court has recently noted that the requirement of an order of filiation for an illegitimate child to inherit from his father who died intestate was but an evidentiary requirement that did not involve the legitimation of the child. (Lalli v Lalli, 43 NY2d 65, affd 439 US 259.)
The dismissal of the original paternity action then, binds only the Commissioner and the respondent. Neither the mother nor the child were parties to that proceeding and, thus, even if the judgment of the court had been a finding of paternity it would not have been a conclusive adjudication of *445 the child’s legal status. When, however, the mother assigns her right to support for her out-of-wedlock child to the Commissioner, as did the petitioner herein, the Commissioner, as assignee, assumes the mother’s right to petition for and receive support from the putative father. Support is then filed for and collected for the State and not on behalf of the mother of the child. (18 NYCRR 347.10, 347.11.) While this assignment of her right to support does not bar petitioner herein from bringing an action for a declaratory judgment of paternity against the putative father in Supreme Court (Matter of Salvatore S. v Anthony S., supra; Matter of Melis v Department of Health of City of N. Y., 260 App Div 772) she has surrendered her standing as a necessary party to the paternity action brought by the Commissioner and therefore may not properly renew that action.
The present petitioner’s motion to renew is denied.

. But see, Ladd v Stevenson (112 NY 325, 332), which states "The whole power of the court to relieve from judgments taken through 'mistake, inadvertence, surprise or excusable neglect,’ is not limited * * * but in the exercise of its control over its judgments it may open them upon the application of anyone for sufficient reason, in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent”.

.1 Rev Stat 642, § 5: "it is made the duty of the county superintendent of the poor, when any woman shall be pregnant of a child likely to born a bastard, and to become chargeable to the county, to apply to a justice of the peace to make inquiry”. (See, e.g., People ex rel. Prior v Prior, 112 Misc 208.)

. Until 1922, the earlier Children’s Courts were still parts of the criminal courts. With the passage of the Upstate Act in 1922, Children’s Courts were established in the counties outside New York City. These Children’s Courts continued until 1962 when they were superseded by the creation of the Family Court. In New York City, the Children’s Courts continued under the auspices of the criminal courts until 1933 when the City Children’s Court was merged with the former Domestic Relations parts of the Magistrate’s Courts to become the Domestic Relations Court of New York City. That court was comprised of a Children’s Court Division and a Family Court Division. *443 Unlike the Children’s Courts outside New York City, however, the Domestic Relations Court did not exercise jurisdiction over paternity actions. These were still brought before the Courts of Special Sessions, a criminal court. Article 5 of the Family Court Act superseded section 6 of the Children’s Court Act, former subdivision 3 of section 122 of the Domestic Relations Law, and article 5 (§ 60 et seq.) of the New York City Criminal Courts Act.

. Report of Joint Legislative Committee on Court Reorganization, No. 2 — Family Court Act, 2 McKinney’s 1962 Session Laws 3446: "Under the new Judiciary Article, the Family Court is given jurisdiction over proceedings for 'the establishment of paternity’ * * * The Committee also decided that it was- under a responsibility to revise the applicable law so that it was civil rather than criminal in nature. Accordingly, the proposed legislation eliminates archaic references drawn from the criminal law.”

. Kagen v Kagen involved a petition brought in Supreme Court under article 4 of the Family Court Act. The Supreme Court dismissed the support petition for lack of jurisdiction. The Court of Appeals, however, ruled that the Supreme Court had concurrent jurisdiction despite the "exclusive, original jurisdiction” of section 411 of the Family Court Act.