OPINION OF THE COURT
Kevin C. Fogarty, J.
This proceeding was instituted by the Department of Social Services to establish paternity of Shari C., born on January 24, 1970.
The petitioner’s assignor contends and the respondent agrees, that they met while they were co-workers at Abercrombie and Fitch in 1968. They both agree that they engaged in sexual relations. The dispute is as to when they ceased having sexual relations.
The petitioner’s assignor contends that their relationship lasted through the summer of 1969 and that she told the respondent that she was pregnant. He referred her to a Doctor Davis who confirmed her pregnancy through blood tests in June, 1969. The tests were paid for by the respondent.
While some expert testimony was offered to interpret the medical records, this evidence was not crucial. Basically, it was a question of whether or not the court believed the *149 testimony of the petitioner’s assignor or the testimony of the respondent. Examining the testimony of the two principal witnesses, there is no doubt in the court’s mind that the mother’s testimony was truthful. Her recollections were consistent with the provable facts whereas the respondent’s original testimony as to the time and reasons for the termination of the liaison were very dubious. In addition, the contradictions on dates that were shown to him were not explained at all.
However, there are other facts to be considered in this case, which cast a different light on the proceedings.
As stated earlier, this proceeding concerns a 10-year-old child who has been raised by her mother without the presence or assistance of a father and without any attempt on the mother’s part to establish the respondent as the child’s father.
Now that her mother is receiving public assistance, the Department of Social Services is seeking to recoup some of that aid by bringing this proceeding for support.
As a condition of eligibility for public assistance, an applicant for aid to dependent children is required to cooperate with the Commissioner of Social Services in establishing the paternity of a child born out of wedlock. (See Family Ct Act, § 571; 45 CFR 232.12 [a] [2].) Failure to cooperate results in the denial of assistance. (45 CFR 232.12 [d].) It has often been held that an order of filiation obtained in such a proceeding merely shifts the burden of support from the State to the father. It does not determine status. (Matter of Bertrand, 100 Misc 2d 439.)
Traditionally, a filiation proceeding was solely a support proceeding, which did not affect the status of the parties. The history of article 5 of the Family Court Act as a vehicle solely for support has been admirably presented by Onondaga County Family Court Judge McLaughlin in Matter of Bertrand (supra) and need not be reiterated here. The legislative history of article 5 reveals that “a principal purpose of the proceeding is to resolve problems of support” (Report of Joint Legis Committee on Court Reorganization, No. 2, The Family Court Act, p 20).
Were this court to find that support without affecting status was the sole legislative intent in filiation proceed *150 ings, it would have no difficulty in entering the order. However, more recently, the concept of “best interests” of the child has appeared setting forth broader consideration for the court to take cognizance of when rendering its decision. The evolving theory underlying article 5 of the Family Court Act recognizes “the protection of the welfare of out-of-wedlock children as the primary purpose of filiation proceedings.” (Matter of J. Children, 50 AD2d 890, 891; Schaschlo v Taishoff, 2 NY2d 408, 411; Committee Comments, McKinney’s Cons Laws of NY, Book 29A, Part I, Family Court Act, § 511.) This concept has generally been enunciated in cases where a finding of paternity is made “in the child’s best interests.” The court has been unable to find a case where the best interests of the child has been considered in denying the entry of a filiation order.
This concept seems to have been affirmed by legislative action since the date of the Matter of J. Children decision (supra). The findings of the Appellate Division were codified in section 517 of the Family Court Act (as amd by L 1976, ch 665) which allows the putative father to institute filiation proceedings without any consideration of the child’s need for support. EPTL 4-1.2 was amended to provide a right of inheritance to illegitimate children and this year the Surrogate’s Court was granted jurisdiction to enter filiation orders in adoption proceedings.
None of these may be construed as support proceedings, but rather all deal with the status of the child and establish rights of inheritance. It should be noted that lest it appear in denying a filiation order that the court is depriving the child of an important and valuable right, the right of inheritance, which a filiation order grants to a child, may be easily defeated by the simple fact that a father may disinherit his child by duly executing a will appropriate for that purpose.
In a proceeding of this nature, other rights, such as custody and visitation, are not factors in light of the respondent’s attitudes toward the child.
One public policy that the State has consistently supported is the right of the State to recoup its expenditures *151 from the responsible parents, i.e., to procure support for children born out of wedlock so that they need not “be supported by the county, city or town chargeable therewith under the provisions of the social welfare law.” (Family Ct Act, §515.)
On the other hand, it is also the public policy of this State to terminate parental rights where a parent has abandoned or neglected a child for periods of six months or a year, respectively. (Social Services Law, § 384-b.)
The present respondent has denied paternity; he has never supported the child; and from the evidence before this court, he has never even seen the child. Establishing a parental relationship should, ideally, be instituted by the mother to provide additional assistance or stability for the child. Here, at best, the court is asked to establish a biological link in return for contribution toward support from a respondent who is already contributing toward four other children, two by a former wife and two out of wedlock. Can the public policy for support be so strong that it can compel the imposition on this child of a father whom she does not know, whom she has done without for 10 years, and, most importantly, who does not want her?
On both the grounds of the best interests of the child and the stronger public policy to free a child from an undesirable parent, the court must dismiss the petition.