OPINION OF THE COURT
John D. Capilli, J.
This motion raises unanswered questions of procedure when a respondent decides to dispute an order of filiation made under section 439 (b) of the Family Court Act after his time to object under section 439 (e) has expired. In this case, respondent made a motion pursuant to CPLR 5015 to vacate the order of filiation made and entered after respondent’s undisputed admission of paternity before a Hearing Examiner.
The paternity petition was filed by the Nassau County Department of Social Services, as assignee of support rights of Maggie M., pursuant to section 571 of the Family Court Act. A hearing was held on the petition to enforce such support rights pursuant to article 4 and to establish paternity of the child pursuant to article 5. An affidavit, annexed to and made a part of the petition, alleged that upon information and belief, petitioner mother, Maggie M., had sexual intercourse with the respondent, Douglas B., on several occasions from January 1986 through March 1987, and as a result, she became pregnant. Subsequently, and on October 29, 1986, Maggie M. gave birth to an out-of-wedlock child, Kendra L. M. The petition alleged that Douglas B. was the father of said child.
The matter, which first came on to be heard before a Hearing Examiner on June 1, 1987, was adjourned to June 15, 1987 to give the respondent time to get an attorney to represent him.
On June 15, 1987, the adjourn date, the respondent appeared for the second time without an attorney. Respondent *372 was again advised by the Hearing Examiner of his right to appear with counsel. At that time, respondent waived his right to an attorney and elected to proceed. The Hearing Examiner then advised Mr. B. of his right to request a blood-grouping test and its cost. He further advised respondent that in the event he was unable to pay the cost of the blood-grouping test in advance, systematic payments could be worked out. Mr. B. was then asked if he wished to have a blood-grouping test. He said he did not. The Hearing Examiner asked Mr. B. if he was the father of Kendra L. M., born to Maggie M. on October 29, 1986. Mr. B. replied "Yes, Sir.”
The Hearing Examiner then stated there was an admission of paternity and the fact finding and disposition as to the establishment of paternity was completed. He advised respondent that the court would now proceed to the support hearing. Mr. B. was advised of his right to be represented by an attorney in the support part of the proceeding and that he could have an adjournment to get a lawyer. Otherwise, he could proceed at that time on the support issue without a lawyer. At that point, Mr. B. requested a lawyer and the matter was adjourned to July 13, 1987.
On July 13, 1987, the respondent appeared and the matter was adjourned to July 27, 1987. On July 27, 1987, the adjourn date for the support hearing, the respondent was screened by the Family Court Screening Bureau and was assigned a Legal Aid attorney. The matter was adjourned to August 31, 1987.
On August 31, 1987, Mr. B. stated that he did not previously request that the order of filiation be vacated because when he indicated to the Hearing Examiner on July 27, 1987 (39 days after the order was entered) that he wanted to deny paternity, he was assigned an attorney. This would infer that the respondent, being uneducated in the rules of court procedure, must have assumed that after he obtained an attorney, the attorney could take the necessary steps to withdraw his admission.
At the August hearing, respondent’s attorney argued that the Hearing Examiner in the instant case questioned Mr. B. about paternity without first advising him of his right to refuse to testify. It was further stated that the circumstances under which Mr. B. admitted paternity and the sole evidence on which the order of filiation was based raise questions as to whether substantial justice was done when the order of filiation was made.
At the request of respondent’s attorney, the matter was adjourned to October 5, 1987.
*373 On October 5, 1987, respondent submitted an order to show cause, requiring the Department of Social Services, on behalf of Maggie M., to show cause before a Judge of this court, why the order of filiation made on June 15, 1987 should not be vacated, or, in the alternative, ordering that a blood-grouping test be administered and that respondent’s admission be stricken from the record.
In support of the relief requested, the respondent, by and through his attorney, argued that:
1) Respondent was not represented by an attorney;
2) Although he was advised of his right to an attorney and.a blood-grouping test, he was not aware of the support obligations that could arise as a result of an admission; therefore, the admission was not knowingly made;
3) Respondent was not told prior to making the admission that he had a right to refuse to testify at the hearing; and
4) No other evidence of paternity was produced.
An affirmation in opposition was submitted by the County Attorney of Nassau County, asking that respondent’s motion be denied in all respects and that the order of filiation of June 15, 1987, made by the Hearing Examiner remain in full force and effect. The County Attorney argued that:
1) An order to, show cause is an improper vehicle by which to request the relief sought by respondent because section 439 (e) of the Family Court Act specifically prbvides the method by which a party may object to an order of a Hearing Examiner. That method is to file written objections "within thirty days after entry of the order, upon notice to the opposing party, who shall have eight days to serve and file a written rebuttal to such objections.”
In this case, written objections were not filed within 30 days after the order of filiation was made pursuant to section 439 (e). Thus, the County Attorney concludes that the respondent is now procedurally barred from seeking relief from the order because Family Court Act § 439 (e) prescribes a method of procedure and Family Court Act § 165 states that where a method of procedure is prescribed in the Family Court Act, the CPLR is not applicable;
2) The facts of the case do not warrant the relief the respondent seeks because respondent knowingly and voluntarily waived his right to counsel and a blood-grouping test;
3) Section 439 (b) of the Family Court Act only requires that *374 the Hearing Examiner "advise the mother and putative father of the right to be represented by counsel” and "advise the mother and putative father of their right to blood grouping tests”. There is no requirement that respondent be advised that he had a right to refuse to testify at the hearing; and
4) Section 531 of the Family Court Act simply states that a respondent may not be compelled to testify at trial. There is no mandate that respondent be so advised and there is no reference in the Family Court Act to respondent’s right to be informed of this privilege.
Respondent, in a reply to the arguments made by the County Attorney, countered that an order to show cause is an appropriate vehicle by which to seek the vacatur of an order of filiation. Filing written objections, as provided for under section 439 (e) of the Family Court Act, is not the sole method by which a party can object to an order of a Hearing Examiner. Respondents who want to object to decisions made by Hearing Examiners are also afforded the protection of the CPLR.
Respondent further argues that CPLR 5015 (a) provides that a court which renders a judgment or order may relieve a party from it upon motion of any interested person and a motion to vacate an order of filiation is well within the scope of CPLR 5015 (a).
The first issue for the court to resolve is whether the respondent is time barred from seeking a vacatur, modification or reversal of the Hearing Examiner’s decision because he failed to timely object within the 30 days after the entry of the order of the Hearing Examiner pursuant to section 439 (e) of the Family Court Act. Is a motion under CPLR 5015 available to the respondent as an alternative method of seeking relief from the order or should section 165 (a) of the Family Court Act be read in this case to mean that because a method for objecting is prescribed in section 439 (e) the CPLR is not applicable?
This court finds that a respondent making an undisputed admission incident to a support proceeding under article 4 is not limited to the 30-day objecting rule prescribed in section 439 (e), but in addition, the CPLR rules apply and motions under CPLR 5015 can be submitted to a Judge as an alternative method of seeking relief from the order of a Hearing Examiner establishing paternity pursuant to section 439 (b).
Moreover, there is no stated time limit on a vacatur motion *375 under CPLR 5015 upon such terms as the court in its discretion deems necessary.
In this case, the Department of Social Services brought an article 4 proceeding pursuant to section 571 of the Family Court Act to enforce support rights and the establishment of paternity was "necessarily” made thereunder.
Article 5 of the Family Court Act gives Family Court jurisdiction in proceedings to establish paternity. Section 564 (a) provides that orders of filiation declaring the paternity of a child can be made in accordance with the provisions of article 5 "[i]n any proceeding in the family court” no matter what its statutory basis where support may be sought by the Commissioner of Social Services from the putative father.
The underlying goal in a paternity proceeding brought under article 5, as in enforcement proceedings brought under article 4, is support. (See, Report of Joint Legis Comm on Ct Reorganization, No. 2 — Family Ct Act, 1962 McKinney’s Session Laws of NY, at 3446; Schaschlo v Taishoff, 2 NY2d 408, 411 [1957]; Matter of Bertrand, 100 Misc 2d 439 [Fam Ct, Onondaga County 1979].)
Therefore, where articles 4 and 5 have the same underlying goal, to wit: support, it follows that it would be improper to limit a respondent to one method of objection under section 439 where article 5 proceedings have no specific procedural provisions and are governed by the CPLR. (See, Family Ct Act § 511 et seq.; CPLR 101, 105 [d]; Matter of Green v Smith, 65 Misc 2d 588; Matter of Harris v Doley, 22 AD2d 769; Matter of Tilson v Bark, 52 Misc 2d 338 [Fam Ct, NY County 1966]; Matter of Torino v Cruz, 369 NYS2d 291 [Fam Ct, Bronx County 1975].)
Moreover, article 5, section 544 is clear that an order of filiation may be abrogated by a later judgment or order of the court that originally made the order.
The nature and effect of respondent’s motion is for vacatur of the paternity order. Relief from such orders has always been governed by CPLR 5015. (See, Lascaris v Hinman, 120 Misc 2d 954 [Fam Ct, Onondaga County 1983].)
CPLR 5015 (a) lists the principal grounds on which a judgment or order may be vacated. None of the various grounds enumerated is applicable in the instant proceeding. However, exhaustive as the list may seem, it is not preemptive. The court has inherent discretionary power to vacate its judgments and orders for good cause shown not limited by the *376 CPLR 5015 (a) list. (Siegel, NY Prac § 426, at 566-567.) The Third Preliminary Report of the Advisory Committee on Practice and Procedure stressed this. (See, 1959 Legis Doc No. 17, at 204.)
New York case law reaches the same conclusion. (See, Ladd v Stevenson, 112 NY 325 [1889].) Courts have control over their own proceedings and, in its exercise, may open their own judgments for sufficient reason. (Matter of Voccola v Shilling, 88 Misc 2d 103, affd 57 AD2d 931 [2d Dept 1977].)
There is further support in the court’s finding after searching section 439 (e) and determining that the statute does not mandate a specific procedure to be followed. Section 165 (a) of the Family Court Act states that "[W]here the method of procedure in any proceeding in which the family court has jurisdiction is not prescribed, the provisions of the [CPLR] shall apply to the extent that they are appropriate to the proceedings involved.”
Family Court Act § 439 (e) states: "The determination of a hearing examiner shall include findings of fact and a final order which shall be entered and transmitted to the parties. Specific written objections to such order may be submitted to a judge within thirty days after entry of the order, upon notice to the opposing party, who shall have eight days to serve and file a written rebuttal to such objections.” (Emphasis added.)
In the construction of statutory provisions, the legislative intent is the great and controlling principle. (Matter of Petterson v Daystrom Corp., 17 NY2d 32 [same being sought first in the words of the statute under consideration]; Matter of Altano v Kirby, 36 NY2d 526, 530 [1975], citing Department of Welfare v Siebel, 6 NY2d 536, 545; Matter of Bowne v Bowne Co., 221 NY 28, 31.)
The language in section 439 (e) employs both the word "shall” in several places and the word "may” in one place. The terms "shall” and "may” have opposite meanings; the former mandatory, the latter discretionary. When different terms are used in various parts of a statute or rule, it is reasonable to assume that a distinction between them is intended. (McKinney’s Cons Laws of NY, Book 1, Statutes § 236; Matter of Albano v Kirby, supra, at 530, citing Waddell v Elmendorf, 10 NY 170, 177.)
It has been the long-recognized rule of construction in the courts of this State that words be construed in accordance with their usual, common and ordinary meaning. (See, McKin *377 ney’s Cons Laws of NY, Book 1, Statutes 232; Riegert Apts. Corp. v Planning Bd., 78 AD2d 595, affd 57 NY2d 206 [1982].) The plain and ordinary meaning of the word "shall” denotes command, whereas "may” denotes permissiveness.
Generally, it is presumed that the use of the word "shall” when used in a statute is mandatory, while the word "may” when used in a statute is permissive only and operates to confer discretion, especially where the word "shall” appears in close juxtaposition in other parts of the same statute. (Metro Burak v Rosenthal & Rosenthal, 51 AD2d 1003 [2d Dept 1976]; 82 CJS, Statutes, § 380.) The deliberate use of the word "may” shows a settled legislative intent not to impose a positive duty. "[I]f the language of a statute is plain and unambiguous, there is neither need nor warrant to look elsewhere for its meaning.” (Matter of Roosevelt Raceway v Monaghan, 9 NY2d 293, 304.) A reading of section 439 (e) clearly indicates that the remedy was intended to be optional, and, thus, this court concludes that current legislation does not expressly foreclose the use of CPLR remedies. Further, this court will not appropriate the function of the Legislature and prohibit a party from seeking CPLR remedies.
However, the court suggests that legislative review may be in order to determine whether statutory provisions should provide more stringent procedures when objections are made to an order of a Hearing Examiner regarding support brought under article 4. This would be in keeping with the objectives, spirit and purpose of the enactors of part 3, article 4. The intent and purpose of the enactment of section 439 of the Family Court Act was to relieve some of the burden which has been placed upon Family Court by increased volume of cases. (See, Matter of Weiner v Weiner, 97 Misc 2d 920, 925-926 [Fam Ct, Monroe County 1979].)
The question arises in the instant case as to whether the court should refer the matter back to the Hearing Examiner who made the finding or should the motion be decided by a Judge of this court?
The nature and effect of respondent’s motion is for vacatur of the paternity order. This court finds that the determining and granting of any relief with respect to issues of contested paternity is beyond the jurisdiction of a Hearing Examiner. Relief from such orders has always been governed by CPLR 5015. (See, Lascaris v Hinman, supra.) And motions to vacate orders are historically referred to Judges.
*378 The enforcement of support proceeding brought in this case under article 4 in no way changes the character of the paternity proceeding brought under article 5. Family Court Act § 439 (b) specifically enjoins a Hearing Examiner from hearing and granting any relief from issues of contested paternity. (Also see, Matter of Richardson v Clark, 132 Misc 2d 986 [Fam Ct, Monroe County 1986].)
In the Richardson case (supra) objections to an order of a Hearing Examiner were made to a Judge. The Family Court, Monroe County, Anthony F. Bonadio, J., sua sponte, vacated the Hearing Examiner’s order dismissing the paternity proceeding with prejudice, and pursuant to Family Court Act § 439 (e) (ii) made its own order granting respondent’s motion to dismiss.
While the court found that authority is granted to a Hearing Examiner to sit "as a Judge” in support and paternity cases and to hear, determine and grant any relief within the powers of the court (22 NYCRR 205.3 [a]) during the course of those hearings, those powers are limited to cases properly before the examiner and powers not specifically enjoined by statute. (Supra, 132 Misc 2d, at 988.)
In the Richardson case (supra), the court found that the Hearing Examiner exceeded her jurisdiction because Family Court Act § 439 (a) specifically enjoins Hearing Examiners from hearing, determining and granting any relief with respect to issues of contested paternity. The granting of respondent’s motion to dismiss by the Hearing Examiner based on his blood test exclusion is a determination of the issue of paternity and the Hearing Examiner should have transferred the proceeding to a Judge for a ruling on that motion.
The motion to vacate the order of the Hearing Examiner is properly before a Judge of this court.
The court now turns to the merits of respondent’s arguments in support of his motion to vacate the order of the Hearing Examiner.
Respondent argues that he was not represented by an attorney. He further states that because he proceeded without an attorney he was prejudiced because he gave an admission without being aware of the support obligations that could arise as a result of that admission.
The court finds no merit in those arguments. Respondent appeared twice in court and was twice advised of his right to have an attorney prior to his admission. He was given an *379 adjournment in order that he might consult with counsel. He chose, however, to appear without counsel and make an admission of the allegations in the petition. (See, Matter of Mary B. v George T., 58 AD2d 832 [2d Dept 1977].)
Further, while there have been cases holding that the young age of a respondent is a factor in permitting a blood-grouping test subsequent to an admission of paternity, (see, Lascaris v Loomis, 105 Misc 2d 501, 503, citing Matter of Leanna M. v Douglas J., 35 AD2d 551), there is no indication in the instant case that respondent is a naive youth, but to the contrary, all evidence indicates he is a competent adult.
However, even though the court finds the respondent voluntarily waived his right to counsel and to a blood test, the allocution which the respondent received before the commencement of the proceeding was deficient because when a putative father is not represented by counsel in a paternity proceeding the court will be in error if it fails to advise him of his right to refuse to testify. (Matter of Shirley D. v Ricardo B., 54 AD2d 564 [2d Dept 1976]; Matter of Morizzo v Arthur N, 69 AD2d 864 [2d Dept 1979]; see also, 12 Zett-Edmonds-Buttrey-Kaufman, NY Prac § 20.02, at 20-6, citing Rodriguez v Purdy, 56 AD2d 804 [1st Dept 1977]; 2 Callaghan, Family Court Law and Practice in New York, § 11:23, at 41, 42 [rev ed].)
In the instant case, had the respondent, who did not have an attorney, received an allocution before the commencement of the proceeding which included advising him of his right to refuse to testify, his admission may not have been so readily forthcoming.
There have been cases where it was found that a respondent may have made an admission as a means of avoiding the embarrassment which is incidental to a contested paternity proceeding. (Hansom v Hansom, 75 Misc 2d 3 ([Fam Ct, Richmond County 1973].)
After the Hearing Examiner inquired of Mr. B. whether he was the father of the child Kendra L. M., born to Maggie M. on October 29, 1986, and the respondent admitted paternity, the respondent further stated, "have all my mail sent to her house, because this way, I’ve been married 21 years and my wife don’t know nothing about it and she * * * I’d rather break this into her my way”.
In light of the statements made by respondent subsequent to his admission of paternity, it was incumbent upon the *380 Hearing Examiner in this case to inquire into the circumstances surrounding the admission to determine whether the admission was voluntarily made (Matter of Antoinette D. v Christopher M., 54 AD2d 564 [2d Dept 1976]), and especially in this case where, as respondent’s attorney points out, there is nothing on the record to show that the order of filiation was based on the allegations made in petitioner’s affidavit annexed to and made part of the petition.
For the foregoing reasons, the court grants respondent’s motion to vacate the order of filiation and sets this matter down for a new hearing on March 16, 1988.