ROBERTSON, Justice,
for the Court:
I.
The kindred of the natural father of a woman born in 1898 but out of wedlock have asserted a claim to inherit from her under our amended statute of descent and distribution. The question is whether the father’s kin have shouldered their burden of proving that the father both acknowledged and treated the woman as his daughter and did not refuse or neglect to support her when she was a child.
The Chancery Court found that the kindred claiming to inherit had failed in their burden and the question on appeal is whether the evidence is such that we should intervene. The evidence before us is quite sketchy and, in view of the lapse of time, perhaps necessarily so. Given our limited scope of review on appeal, we may only affirm.
II.
Hattie Ford was born in 1898. Her parents were Andrew McCarty and Pearlie Mackey, who never married. Ford was raised by her mother and maternal grandparents. Hattie Ford married Rayfield Ford who predeceased her. The Fords had no children. Hattie Ford died intestate on October 14, 1986, a resident of the Second Judicial District of Panola County. Her only surviving relatives at the time of her death were several maternal first cousins of the whole-blood and several paternal nieces and nephews of the half-blood.
After Hattie was born, her father, Andrew McCarty, married another woman and had two daughters, Estelle and Iona. Estelle married and became Estelle Sisk and had seven children. Iona married and became Iona Moore and had three children. These ten are Clara Woodall, Euthie Mae Moore, Lela Moore Hickins, James Sisk, *1066 Hayes Sisk, Robert Lee Sisk, Rosie Sisk, Blanche Andrews, Welthy Mae Sisk, and Ella Mae Sisk Horton. The children of Estelle Sisk and Iona Moore are half-blood nieces and nephews of Hattie Ford. They are the “kindred” of Andrew McCarty within the meaning of Miss.Code Ann. § 91 — 1—15(3)(d)(i) (Supp.1989), were the claimants below, and are the Appellants here.
Pearlie Mackey, Hattie Ford’s mother, had several brothers and sisters who predeceased Ford. These brothers and sisters left eight children who survived Ford. These include P.L. Johnson, Sarah Brassell, Ike Johnson, Hattie Fondren, Ora Ford, John A. Barr, Frances C. Brown, and Bob Lee Johnson. Collectively these descendants of Pearlie Mackey are Appellees here. In relation to Ford they are first cousins of the whole blood.
On November 24, 1986, some forty-one days after Hattie Ford’s death, P.L. Johnson, one of Mackey’s kinspeople, filed a petition in the Chancery Court of the Second Judicial District of Panola County seeking appointment as the administrator of Ford’s estate. On that same day, Letters of Administration were issued to Johnson. On November 26, 1986, a “NOTICE TO CREDITORS” was first published in The Panolian and was also published on December 3, 1986 and December 10, 1986. After several procedural missteps, the grandchildren of Andrew McCarty, led by Clara Woodall, intervened and claimed Ford’s estate.
The First and Final Accounting reflected a modest estate available for distribution to Ford’s heirs at law. A checking account in the Batesville Security Bank held a net balance of $1,584.13. A Golden Savings Account in United Southern Bank, Bates-ville, Mississippi, held $9,608.64 as of May 1987.
The trial was short. Before any witnesses were called, the parties stipulated the family tree of Hattie Ford and offered a chart reflecting the relation of those claiming to be her legal heirs. A copy of this chart is included as an Appendix to this opinion. Clara Woodall, the lead claimant below, called only two witnesses who testified, herself arid her husband Alex Woo-dall. Administrator Johnson called only one witness, Ora Barr Ford, who is one of the first cousins of Hattie Ford. At the time of the trial Ora Barr Ford was 81 years old. At the conclusion of the trial, the Chancery Court requested each side to submit proposed findings of fact and conclusions of law.
The Chancery Court issued findings of fact and conclusions of law, ruling that the legal heirs of Hattie Ford were her maternal first cousins of the whole blood. The Court held, inter alia, that Andrew McCarty, Hattie Ford’s natural father, had never acknowledged her as his daughter and, moreover, had refused or neglected to support her during her childhood. Therefore, pursuant to Miss.Code Ann. § 91 — 1—15(3)(d)(i) (Supp.1989), the nieces and nephews of Hattie Ford claiming through McCarty were precluded from inheritance.
This appeal has followed.
III.
A.
If Andrew McCarty and Pearlie Mackey had been married when they gave birth to Hattie, Appellants would win. Clara Woo-dall and her nine eo-Appellants are nieces and nephews óf the half-blood. Paternal nieces and nephews of the half-blood take ahead of maternal first cousins of the whole blood, such as Johnson. Miss.Code Ann. § 91-1-3 and 91-1-11 (1972).
The point needs amplification. The order of descent in Section 91-1-3 is not wholly consistent with “the rules of the civil law.” Paternal nieces and nephews of the half-blood take ahead of maternal first cousins of the whole-blood because the statute says so. Once the specific statutory orders of descent are exhausted, “the rules of the civil law” take over and control and further questions of rank among kindred of an intestate.[1]
*1067 Returning to today’s facts, we find that the statute ranks paternal nieces and nephews in the second degree. Such persons are “descendants of ... sisters ... of the intestate.” That they are descendants of Ford’s sisters of the half-blood matters not, as Miss.Code Ann. § 91-1-5 (1972) declares that fact irrelevant except in contests for inheritance among kindred “in equal degree.” Maternal first cousins of the whole blood, such as Johnson, are not expressly ranked in the statute. Resort to the rules of the civil law reveals them kindred of the intestate in the fourth degree,[2] a rank lower than that enjoyed by the paternal nieces and nephews.
Our fundamental premise is that there is no natural law of inheritance. Intestate succession via descent and distribution is purely a function of the positive law of the state. See Jones v. Stubbs, 434 So.2d 1362 (Miss.1983). Subject only to constitutional parameters, none of which are invoked here, Section 91 — 1—15(3)(d)(i) is controlling. That statute provides:
The natural father of an illegitimate and his kindred shall not inherit from or through the child unless the father has openly treated the child as his, and has not refused or neglected to support the child.
[Emphasis supplied] The illegitimate within the meaning of this statute is Hattie Ford. The natural father is Andrew McCarty. Appellants are the “kindred” of the natural father.
Woodall and her fellow Appellants assert a claim that they are entitled to inherit through McCarty. The structure of the act and the course of proceedings below are that one asserting such a claim bears the burden of persuasion of each of its elements. What is important is that parties such as Appellants bear the risk of an adverse judgment if they fail to establish the elements of their claim.
The statute provides that those claiming through Mackey must prove three facts: (1) that each is the blood kin of the natural father of an illegitimáte, (2) that the father, McCarty, openly treated the child, Hattie Ford, as his, and (3) that McCarty did not refuse or neglect to support Ford when she was a child — the latter requisite being legislatively (and pointedly) worded in the negative.
B.
The first point is ordinarily most vital. Adjudging paternity is more than a mere civil dispute persons need fairly resolved so they can get on with the rest of their lives. Where (as here) the claim is brought following the death of the intestate, the claimant must establish paternity by “clear and convincing evidence,” Miss.Code Ann. § 91-l-15(3)(c) and (c)(iv) (Supp.1989). This statutory declaration reflects the high degree of confidence society demands in such adjudications. See In Interest of M.R.L., 488 So.2d 788, 790 (Miss.1986); Natural Father v. United Methodist Children’s Home, 418 So.2d 807, 810 (Miss.1982); see generally Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); and Note, The Burden of Proof in a Paternity Action, 25 J.Fam.Law 357, 363-64 (1986).
On this point, there can be no doubt. The evidence is uncontradicted that McCarty was the father of Hattie Ford and that Appellants are McCarty’s grandchildren, Ford’s nieces and nephews. On the other two points, the proof is far more problematical.
To' begin with, the statute articulates no standard of proof on acknowledgment and support. Of course, the ordinary standard in civil cases is by a preponderance of the evidence. The interests of legitimate heirs, and of society as a whole, in averting fraudulent claims seem adequately served by the clear and convincing standard for proof of paternity. Logical symmetry affords no imperative that the standard be the same on issues of acknowledgment and support. If we look at the cases of intestate inheritance by and of persons born in wedlock, we see that failure of paternal *1068 support constitutes no bar to intestate succession. Moreover, practical reality may make clear and convincing proof of support a near impossibility — not to mention the inherent difficulties in proving a negative. We hold that at trial Appellants were saddled with the burden of proving by a preponderance of the evidence that McCarty openly recognized Hattie Ford as his child and that McCarty did not refuse or neglect to support her.
The record reflects that Ora Barr Ford testified that she could not remember Andrew McCarty visiting Hattie Ford or Ford visiting McCarty. Within the knowledge of Ora Barr Ford, Hattie Ford’s mother and grandparents provided Hattie Ford with all the necessities of life without any aid from Andrew McCarty. Significantly, Ora Barr Ford was the oldest witness at the trial, being 81 years old, only seven years younger than Hattie Ford. While growing up together Hattie and Ora lived across the road from each other and often played together.
In the end, the Chancery Court found “there was no testimony whatever that Andrew McCarty openly recognized Hattie Ford as his child.” This may only be treated as a finding of fact that Woodall failed to prove this element of her claim. Given the evidence in the record, we certainly may not say that the Court’s finding on this issue was manifestly in error or was unsupported by the substantial evidence. Leard v. Breland, 514 So.2d 778, 781 (Miss.1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1349 (Miss.1987).
C.
The third element of Appellants’ claim is proof of the negative: that McCarty did not refuse or neglect to support Ford. We have considered this point once before in Burdette v. Crump, 472 So.2d 959 (Miss.1985) and did not decide whether “meager” support would satisfy the statute. Burdette, 472 So.2d at 962-63; see also Alexander v. Alexander, 465 So.2d 340, 341 (Miss.1985). Of course, refusing or neglecting to support a child is qualitatively different from mere failure to support. See Department of Welfare of City of New York v. Siebel, 6 N.Y.2d 536, 546, 190 N.Y.S.2d 683, 691, 161 N.E.2d 1, 7 (1959), and this is no doubt the reason for the legislative language. The record before us, however, has no evidence regarding McCarty’s support or non-support of his daughter, Hattie Ford during her minority. What is before us is the fact that Ford was raised by her mother, Pearlie Mackey, and by her maternal grandparents. We note that the Chancery Court found that “the testimony was uneontradicted that he [McCarty] failed and neglected to support her [Ford].” This is a bit strong. There is simply no evidence one way or the other. Because Appellants bore both the burden of persuasion on each element of their claim and, as well, the risk of non-production, their claim must fail.
IV.
Appellants complain further that the Chancery Court adopted verbatim Johnson’s proposed findings of fact and conclusions of law. It is true that at the conclusion of the trial the Court requested that each side submit proposed findings of fact and conclusions of law for its consideration when deciding the case. The submissions of the parties are not included in the record on appeal. We have no means from the record before us of determining whether the Chancery Court did in fact adopt verbatim Johnson’s submission. Assuming ar-guendo, Johnson’s factual claim is correct, the point is controlled by Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265-66 (Miss.1987). Even when the evidence is subjected to. the heightened scrutiny authorized in Rice Researchers, we find that Appellants have failed to carry their burden of proof.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and.DAN M. LEE, P.JJ. and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
*1069 [[Image here]]

. See The Nolan Chart of Relationships and Degrees of Kindred According to the Civil Law, *1067 reprinted in Owen v. State, 255 Ala. 354, 355, 51 So.2d 541, 542 (1951).

. See note 1, supra.