Salvatore E. **FLORIO**, o/b/o Sally Mae Florio, infant, Plaintiff-Appellee,

v.

Elliot **RICHARDSON**, Secretary of Health, Education and Welfare, and Avis Sibblies, o/b/o Enos S. Williams, II, infant, Defendants-Appellants.

**No. 64, Docket 72–1265.**

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1972.

Decided Nov. 8, 1972.

Gerald A. Rosenberg, Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S. D. New York, New York City, of counsel), for defendant-appellant Elliot Richardson.

Michael D. Hampden, New York City (Kalman Finkel, The Legal Aid Society, New York City, of counsel), for plaintiff-appellee Salvatore E. Florio.

Before MANSFIELD, OAKES and TIMBERS, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises a rather narrow question of statutory interpretation: whether insurance benefits periodically paid to a stepchild pursuant to the Social Security Act, 42 U.S.C. § 402(d) (1969) (the "Act"), as the result of dependency upon his stepfather, the wage earner, must be terminated upon the stepfather's divorce. The district court held that the divorce did not terminate the benefits, a conclusion with which we agree. However, it further concluded that the benefits were terminated by reason of the child's relationship with his natural father, which was found to be an "adoption" under the Act. We disagree and reverse.

On March 9, 1965, Salvatore E. Florio ("Florio"), a wage earner who had been awarded old-age insurance benefit payments pursuant to the Act, 42 U.S.C. § 402 (1969), filed an application for continuation of child's insurance benefit payments for his natural daughter, Sally Mae, and in addition for the payment of benefits to three stepchildren whom he had acquired as the result of his earlier marriage to Avis Sibblies ("Avis"), one of whom was Enos S. Williams, II ("Enos"), born of Avis' earlier marriage to one Sidney Williams. The application was granted and thereafter the amount of child's insurance benefits payable upon Florio's earnings record, which was limited by §§ 203(a) and 215(a) of the Act, 42 U.S.C. §§ 403(a) and 415(a) (Supp.1972) was distributed in equal shares to Sally Mae and the three stepchildren.

In April 1966 Florio and his wife, Avis, were separated. Following the separation Florio sought unsuccessfully to terminate the payment of benefits to the three stepchildren so that Sally Mae,

his natural child, would enjoy the full child's benefit rather than share it on a pro rata basis with each of the stepchildren. Participation by two of the stepchildren was terminated pursuant to applicable law, 42 U.S.C. § 402(d)(1) upon their reaching the age of 18, one in 1966 and the other in 1968. Thereafter the maximum amount of child's benefits payable upon Florio's earnings record was shared equally by Sally Mae and the stepson Enos. Although the record is not entirely clear, it further appears that following the separation of Florio and Avis the stepson Enos took up residence elsewhere and, in addition to the insurance benefits, may have received support from his natural father, Sidney Williams, who had in December 1956 entered into a separation agreement with Avis, then his wife, obligating him to pay $15 per week for Enos' support. In 1969 that agreement was the subject of an order of enforcement by the Bronx County Family Court after Avis had filed a non-support petition.

In February 1970 Florio was divorced from Avis. Following a denial by the Social Security Regional Representative of Florio's request for reconsideration of the Administration's decision refusing to terminate payment of benefits to his former stepson Enos, a hearing was held on August 10, 1970, before a Hearing Examiner which resulted in a written decision by the Examiner, filed on August 28, 1970, concluding as follows:

"It is the decision of the Hearing Examiner that since none of the terminating events described in Section 202 of the Social Security Act, as amended, has occurred, the entitlement of Enos S. Williams II, to Child's Insurance Benefits on the wage record of Salvatore E. Florio, Social Security Number 091–01–0457, will continue."

On January 29, 1971, the Examiner's decision was affirmed by the Appeals Council. On March 12, 1971, Florio commenced the present action pursuant to § 205(g) of the Act, 42 U.S.C. §

405(g) (1969), for review of the decision of the Secretary of Health, Education and Welfare denying his request that insurance payments to his daughter Sally Mae be increased by the amount paid to Enos. Although Avis was joined as a defendant, she has not appeared.

The issue before the district court and now before us is clearcut: whether the Social Security Act requires that payment of child's insurance benefits be continued to a former stepchild of the insured wage earner. The controlling sections of the Act are § 202(d) and § 216(e), 42 U.S.C. §§ 402(d), 416(e). Section 202(d) provides in pertinent part:

"(d)(1) Every child (as defined in section 216(e) ) . . . of an individual entitled to old-age . . . insurance benefits . . . if such child—

"(A) has filed application for child's insurance benefits,

"(B) at the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time student and had not attained the age of 22, . . . .

"(C) was dependent upon such individual—

"(i) if such individual is living, at the time such application was filed,

\* \* \* \* \* \*

"shall be entitled to a child's insurance benefit for each month, beginning with the first month after August 1950 in which such child becomes so entitled to such insurance benefits. . . ."

A "child," as that term is used in § 202(d)(1) includes "a stepchild who has been such stepchild for not less than one year immediately preceding the day on which application for child's insurance benefits is filed . . .," § 216(e), 42 U.S.C. § 416(e), and such a child is deemed dependent upon his stepfather within the meaning of § 202(d)(1) if, at the time when the application for benefits was filed, he was living with *or* receiving one-half of his support from the stepfather. § 202(d)(4), 42 U.S.C. § 402(d)(4).

Furthermore, once a child becomes entitled to benefits under § 202(d)(1), his entitlement terminates the month preceding the month the child dies, marries or is adopted, or the month in which he has attained age 18, but then only if he is not disabled and not a full-time student.

■ As Judge Gurfein recognized, the Congressional scheme embodied in the foregoing statutes is clear. Congress could have provided that a child's entitlement to insurance benefits would depend upon a demonstration of the child's actual continuing dependency. However, the lawmakers recognized that such a program might prove to be administratively unworkable, since it would necessitate a continuing review of the child's relationship to the wage earner and of the child's income from other sources, both of which might change from time to time. Accordingly, they provided that the entitlement to benefits would be determined by more easily ascertainable events and by objective tests. To qualify for benefits the child need only show the existence of a statutorily defined relationship to the wage earner at the time of his application for benefits. 42 U.S.C. §§ 402(d), 416(e). Monthly benefits would thereupon become payable on the theory of *probable,* as distinguished from *actual,* need which normally occurs when a wage earner retires or dies. The child would continue to be eligible for payment of benefits even though some of the circumstances required to be shown at the time of application should change and even though the child might not continue to meet the threshold requirements prescribed by 42 U.S.C. § 416(e) for entitlement. Benefits would terminate only upon the occurrence of any one of four events: (1) death, (2) marriage, (3) adoption, or (4) attainment of the age of 18 (provided the child is not disabled and not a full-time student), 42 U.S.C. § 402(d)(1).

■ Applying the plain language of the foregoing provisions, of the Act to the present case, it is undisputed that Enos qualified as a dependent child at the time of the application made on his behalf by his stepfather, Florio, on March 9, 1965. We further agree with the district court's conclusion that he was not divested of his eligibility because of his mother's divorce from his stepfather, Florio, since the wage earner's divorce is not one of the four terminating events specified in § 202(d)(1). Appellee argues that these events are descriptive rather than exhaustive. We disagree. Congress knew how to prescribe divorce as a terminating event and indeed did so in other sections of the Act. See, e. g., 42 U.S.C. §§ 402(b)(1), 402(c)(1). For our purposes its decision not to do so in § 402(d)(1) is final. The legislative scheme adopted by it operated to relieve the Social Security Administration of the necessity of resolving such difficult questions as the effect of a divorce upon the wage earner's obligation to support his former stepchild, see, e. g., Department of Welfare v. Siebel, 6 N.Y.2d 536, 190 N.Y.S.2d 683, 161 N.E.2d 1 (1959), appeal dismissed, 361 U.S. 535, 80 S.Ct. 586, 4 L.Ed.2d 538 (1960).

■ Turning to the four terminating events specified by § 402(d)(1), however, the district court found *sua sponte* that since Enos' natural father had "reassumed" his duties of support he would be treated as having constructively "adopted" his own son, Enos, thereby terminating the latter's eligibility for continued benefits. The court's rationale was summed up as follows:

> "Enos' father cannot in the legal sense 'adopt' his own child who was born out of his former marriage with Avis, but in this case he has been required to reassume duties of support. Whether the new support of the child is by a new adopting parent or by an existing father, the result is the same.
> " . . . But on the facts of this case, the resumption of obligation by the natural father is equivalent to an

'adoption' under the statute and divests the entitlement."

Here we must part company with the learned district judge. In the first place there is no record proof that the natural father "reassumed" his obligation to support his son. Indeed it appears undisputed that both by law and by separation agreement (the terms of which later became part of a Family Court order) the relationship between Enos and his natural father was at all relevant times, including the period of Enos' step-relationship with the wage earner, unchanged. The natural father continued to be primarily obligated to support his son, N.Y. Family Court Act § 413 (McKinney Supp.1972), and no new obligation was assumed by him after the stepfather's divorce from Enos' mother. Furthermore, the recognition by a father of his obligation to support his own child would not in any event constitute an "adoption," which in New York is a well-recognized legal procedure prescribed by its Domestic Relations Law § 109 et seq. (McKinney Supp. 1972). See King v. Secretary of Health, Education & Welfare, 224 F.Supp. 846 (E.D.N.Y.), affd., 337 F.2d 859 (2d Cir. 1964). While subscribing to the view that the provisions of the Act should be interpreted liberally, Haberman v. Finch, 418 F.2d 664 (2d Cir. 1969); Dvorak v. Celebrezze, 345 F.2d 894, 897 (10th Cir. 1965), we cannot agree that Williams' acknowledgement of his responsibility to support his own child amounted to an "adoption" as that term is used in the Act.

The fundamental defect in the suggestion that the natural father's "resumption" of support constitutes "adoption" lies in its departure from the clearly defined Congressional scheme of providing that a child's entitlement to and divestment of benefits will be determined by extrinsic events and objective tests rather than through an administrative review and finding of actual dependency. "Whether wisdom or unwisdom resides in the scheme of benefits set forth in Title II, it is not for us to say. The an-

swer to such inquiries must come from Congress, not the courts. Our concern here, as often, is with power, not with wisdom." Helvering v. Davis, 301 U.S. 619, 644, 57 S.Ct. 904, 910, 81 L.Ed. 1307 (1937).

We agree with the district court that this scheme may produce an "anomalous situation" in some instances, such as the present, where the ex-stepchild may well be receiving some support from the natural parent (on this the record is unclear) and the former step-parent may have a conditional obligation to support, albeit a subordinate one to that of the natural parent. Department of Welfare of City of New York v. Siebel, *supra*. But to stretch the terms of the Act to accommodate apparent equities in a given case would be to rewrite both its language and Congress' intent. Disregarding the serious factual issue raised as to whether the natural father "reassumed" support, we would be confronted with the question of whether the stepson would become re-entitled to payment of benefits if his natural father should fail to continue supporting him. This is the very type of continuing factual review and redetermination which Congress sought to avoid. If, on the other hand, it were decided that payment of benefits should depend upon the natural father's *legal* relationship with his child, the latter would not have qualified for benefits in the first place, since that relationship was the same at the time of application as it is now.

 We find no merit in appellee's contention that the challenged provisions of the Act violate the Fifth Amendment's Due Process Clause (which appellee translates into a guarantee of equal protection, Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954) ) insofar as the effect is to treat Florio's natural child, Sally Mae, less favorably than those whose benefits do not happen to be reduced by the continued eligibility of a parent's ex-stepchild. Aside from the doubtful existence of any definable class allegedly the subject of discrimination, we hold that since the Congression-

al scheme, for reasons already detailed, is rationally based, it meets constitutional requirements. See Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L. Ed.2d 491 (1970); Flemming v. Nestor, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). Stepparents are legally obligated, albeit on a secondary and conditional basis, to support their stepchildren, as Florio apparently recognized in applying for insurance benefits for Enos. The Act's provisions for continuation of such benefits after divorce is neither arbitrary nor irrational since in many, if not most, instances the change in marital relationship does not create a new source of support for the stepchild. To strip the latter of benefits would be to discriminate in favor of the natural child.

The judgment of the district court is reversed and the case remanded with directions that the complaint be dismissed.