Nannie Lou **BOYLAND** et al.,
Plaintiff–Appellant,

v.

Joseph A. **CALIFANO**, Jr., Secy. of Health, Education and Welfare, Defendant–Appellee.

No. 77–1762.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 11, 1979.

Decided May 29, 1980.

Rehearing Denied Aug. 1, 1980.

Henry A. Martin, Nashville, Tenn., for plaintiff–appellant.

Hal D. Hardin, U.S. Atty., Aleta G. Arthur, Asst. U.S. Atty., Margaret M. Huff, Nashville, Tenn., for defendant–appellee.

Before ENGEL and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

Plaintiff–Appellant Nannie Lou Boyland, et al., appeals from a summary judgment of the United States District Court for the Middle District of Tennessee, affirming the final decision of the Secretary of Health, Education and Welfare that Ms. Boyland's minor claimants, Marilynn and Lorenzo Knight, are not entitled to surviving child's benefits under the Social Security Act §§ 1 et seq., 42 U.S.C. §§ 301 et seq. We reverse and remand for payments of benefits.

## I.

On December 15, 1975, plaintiff filed an application for surviving child's insurance benefits on behalf of Marilynn Lou and Lorenzo Knight[1] based on the Social Security earnings record of James Henry Hamilton, who died February 26, 1975. The plaintiff claimed that Mr. Hamilton was the father of the two children.[2] The Social Security Administration determined that the two children failed to satisfy the requirements for entitlement as the children of Mr. Hamilton.[3]

After Appellant's request for a hearing, an Administrative Law Judge (ALJ) con-

---

1. The birthdates were June 27, 1959 and August 27, 1964, respectively.

2. It appears from the record that the deceased, James H. Hamilton, lived in a common–law relationship with Mrs. Nannie Lou Boyland for about twenty (20) years. During this time period, Mrs. Boyland alleged she bore five (5) children, all whom were fathered by the deceased.

3. These requirements are as follows:
 *APPLICABLE STATUTORY PROVISIONS*

 Section 202(d) of the Act (42 U.S.C. § 402(d)), as pertinent here, provides as follows: ·
 "(1) Every child (as defined in section 216(e) of this title) . . . of an individual who dies a fully or currently insured individual, if such child–
 (A) has filed application for child's insurance benefits
 \* \* \* \* \* \*
 (C) was dependent upon such individual–

 \* \* \* \* \* \*

 (ii) if such individual had died, at the time of such death . . .

 shall be entitled to a child's insurance benefit . . ."
 Section 202(d)(3) of the Social Security Act (42 U.S.C. § 402(d)(3)), as here pertinent, provides:
 "A child shall be deemed dependent upon his father . . . at the time specified in paragraph (1)(C) of this subsection, unless, at such time, such individual was not living with or contributing to the support of such child and—
 (A) such child is neither the legitimate nor adopted child of such individual, or
 (B) such child has been adopted by some other individual
 (II) had been decreed by a court to be the father of the applicant, or
 (III) had been ordered by a court to contribute to the support of the applicant because the applicant was his son or daughter, and such acknowledgment, court decree or court order was made before the death of such insured individual, or
 (ii) such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

sidered the case *de novo* and on October 29, 1976, rendered a decision denying the surviving child's insurance benefits. In the view of the ALJ, the evidence failed to establish that either of the children was the "child" of the deceased wage earner within the meaning of the Act.[4] The Appeals Council adopted the judgment of the ALJ which became the final decision of the Secretary of Health, Education and Welfare on February 9, 1977.

Appellant then filed suit in the district court to obtain judicial review of the Secretary's final decision. Although the District Court held that the Secretary's finding that the deceased wage earner was not the father of the two children was unsupported by substantial evidence in the record, the Court granted summary judgment for the Secretary. The District Court's ruling that the deceased Hamilton was the father of the two children would entitle the claimants to the benefits in question providing the wage earner was also found to be living with or contributing to the support of the children at the time of his death. 42 U.S.C. § 416(h)(3)(C)(ii). By granting summary judgment for the Secretary, the district court found substantial evidence that the deceased was not contributing to the support of the children at the time of his death.[5]

At oral argument before this court, Appellant Boyland raised a separate issue for the first time: is the proper time for making the determination of when the wage earner was contributing to the support of the children the time of the wage earner's death, as has been assumed throughout the litigation, or at the time the wage earner himself became entitled to Social Security benefits?[6] Because we viewed this question as one of first impression, both parties received additional time to brief the issue.

Appellant urges this court to adopt the vesting theory of entitlement. This theory asserts that the proper moment to determine whether the father of a child born out of wedlock contributed to the support of the child(ren) is when the wage earner himself became entitled to the Social Security benefits.[7] This early "vesting" would eliminate any examination into the nature of the wage earners' contributions to his children's support just before his death except when the wage earner dies before he becomes entitled to benefits. Such would be the case, argues the appellant, even though the child did not apply for benefits until after the wage earner died.

The government argues that contribution should be determined at the time of the wage earner's death because to do otherwise conflicts with the plain meaning of the

4. *See* n. 3, *supra.*

5. In March of 1975, following the departure of the decedent, plaintiff stated in her application for those benefits that "the other two (2) children [Marilyn and Lorenzo Knight] live with me [plaintiff Nannie Lou Boyland] and Mr. Hamilton was not contributing to their support." This admission coupled with testimony (that Hamilton withdrew what little aid he was giving around 1972 after being convinced that the plaintiff's decision to marry someone else actually severed their pre–existing relationship) constituted the substantial evidence.

6. *Teresa Ann Joseph v. Mathews*, CCH Unemployment Insurance Reports, 15,709 (E.D.Cal. Jan. 10, 1978), was the first district court decision holding that where an illegitimate child applies for child's benefits based upon the earnings record of the deceased parent who had already become entitled to old–age benefits the question of whether or not the deceased was contributing to the support of the child is to be

answered as of the time the wage earner became entitled to benefits or reached the age of 65, whichever came first, in accordance with 42 U.S.C. § 416(h)(3)(A)(ii).

7. Appellant relies on *Florio v. Richardson*, in support of his vesting theory. 469 F.2d 803 (2d Cir. 1972). In *Florio*, unlike the appellants, the stepchild had filed an application and was receiving benefits under his stepfather's account. After he attempted to terminate his stepchild's benefits so that his natural child would have the full amount of the benefits. The Second Circuit ruled that the stepchild could not be divested of benefits because of subsequent events which would have disqualified the stepchild had the application followed rather than preceded the divorce. However, the *Florio* court makes repeated reference to the situation "at the time of application." *See e. g., id.*, at 806–7.

applicable statute.[8] While it is true that the heading of the allegedly applicable statute, 42 U.S.C. § 416(h)(3)(C)(ii), states "In the case of a deceased individual", the question remains whether Congress intended an earlier moment of vesting based upon the eligibility date of the wage earner where the wage earner has died prior to a determination of eligibility.

## II.

■■■ We are of the opinion that the application by the claimant determines whether 42 U.S.C. § 416(h)(3)(C)(ii) or 42 U.S.C. § 416(h)(3)(A)(ii) controls. In other words, any vesting occurs by the filing of the application.[9] Other provisions of the Act support this conclusion. For example 42 U.S.C. § 402(d)(1)(A) requires a child to file an application before entitlement to child's insurance benefits "vests." We think that Congress intended to create an alternative time to determine whether a deceased wage earner "contributed" to the support of the claimant while the wage-earner was alive. Had the plaintiff filed an application for benefits prior to Mr. Hamilton's death, the controlling statutory provisions indicate that "contribution to the support of the children" may be shown at the time of the eligibility of the wage earner.

However we decline to interpret the introductory phrase of § 416(h)(3)(C)(i) "in the case of a deceased individual" as applying only where the insured died prior to age 65 and prior to eligibility for benefits.[10] There are no such qualifying words in the statute excluding those deceased individuals who were eligible for benefits before they died.[11] Consequently we conclude, from the wording of the statute, that Congress provided a "child" two opportunities for applying for benefits: One, when the wage earner, himself, becomes eligible for benefits and the other, when the wage earner dies. Unless an application has been filed by the child or on its behalf, whatever rights may exist, remain inchoate. We conclude that the government is correct on this issue and we must make an overall examination of the wage earner's contributions to his children before he died.

## III.

There is no universally accepted test for determining what constitutes "contributing to the support of the applicant," under § 416(h)(3)(C)(ii) of the Act. A majority of courts apply either a regular and substantial "support test" or a "regular and continuous support test."[12] Both approaches

8. 42 U.S.C. § 416(h)(3)(C)(ii).

9. See n. 8, supra.

10. We understand that the district court in Joseph v. Mathews, supra, has adopted the view explicitly rejected by this court on the facts presented. We note that in the Joseph factual pattern the

"evidence indicate(d) that Kennedy (insured) was a white liquor store owner in a black community in Kentucky and that plaintiff's mother was a 13 year–old black female at the time of plaintiff's conception. No bastardy action was brought against Kennedy because of the racial repercussions that might have arisen in the town; such an action, if successful, would have avoided the dispute under the terms of § 416(h)(3)(A)(i) or section 416(h)(3)(C)(i). Id. at 2199–65.

11. We find ample support for our position on this question. See United States v. Clark, 445 U.S. 23, 100 S.Ct. 895, 63 L.Ed.2d 171 (1980).

Moreover, Congress has demonstrated in other social welfare legislation that it knows how to restrict the class of eligible beneficiaries to those living with [individuals] at a

particular time. Id. at 6, 100 S.Ct. at 900 (emphasis added).

See also n. 4 Id.

Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978); Mathews v. Lucas, 427 U.S. 49, 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976).

12. Carey v. Social Security Board, 62 F.Supp. 458 (W.D.Ky.1945), first applied the regular and substantial test holding that twenty–five percent of the child's total expenses satisfied the standard. In subsequent cases, the critical factor continued to be what portion of the child's support was derived from the contribution. See Miller v. Califano, CCH Unemployment Insurance Reporter, # 15,370 (E.D.La. 1971). The "regular and continuous" standard was propounded in response to a claim where the father, a casualty of Vietnam, had contributed six dollars and some infant habiliments. The court found such "contributions" sporadic and insignificant. Norton v. Richardson, 352 F.Supp. 596 (D.Md.1972), vacated and remanded, sub nom. Norton v. Weinberger, 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150, on remand

stress that "sporadic" contributions are insignificant for analytical purposes vis-á-vis the Act, presumably because the physical well being of the child is not enhanced by sporadic contributions. This is precisely the Secretary's position. In its argument, the Secretary concedes that the wage earner made some contributions, "(t)hey were . . . . not continuous and probably had stopped altogether sometime before Hamilton's death. Hamilton's contributions, therefore, cannot qualify as sufficient under either test." [13] Assuming, as the Secretary maintains, that Mr. Hamilton's contributions are inadequate under "either test," we find the tests inappropriate under these circumstances.

■ Obviously, continuously regular and substantial contributions is a just standard when the wage earner's income is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied. Where a wage earner is poor and earns an irregular income, it is ludicrous to require regular and substantial payments to his children born out of wedlock or not. The wage-earner is barely supporting himself. Instead, attention should be focused on whether the contributions that were made to the support of his children were important to them given their needs and the wage earner's economic circumstances and ability to support. [14] Certain facts place this case within the above category.

■ At the time of his death Mr. James Henry Hamilton was a retired stone mason with a minimum income. Two of his children lived with him. Two others lived with Mrs. Nannie Lou Boyland, their mother, who alternatively worked or relied on public assistance for additional support. Despite his poverty, Mr. Hamilton on numerous occasions gave $5.00–$10.00 to his children (living with their mother) or to others for them, bought them clothing and presents, gave them lunch money and allowed them to stay in his home for weeks at a time. We cannot ignore the obvious importance of these contributions to Marilyn Lou and Lorenzo Knight. [15]

The lack of economic well-being or regular income does not eliminate the statutory requirement of "contribution." However, where the resources of the wage earner are scarce and the contributions to his children important to them, the statutory requirements can be satisfied. We emphasize that the periodic contributions were made to the wage earner's own children albeit born out of wedlock. The children should not be denied benefits because the wage earner could only afford small irregular payments.

Accordingly, we find that the decision of the Secretary that James Henry Hamilton was not contributing to the support of his two children, Mary Lou and Lorenzo Knight, is unsupported by substantial evidence. This case is reversed and remanded for an award of benefits.

ENGEL, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that the time for determining whether the decedent contributed to the support of Marilynn and Lorenzo Knight was at the time of his death. I would affirm the denial of benefits, however, because I agree with United States District Judge Morton's conclusion, which he reached with admitted personal regret, that substantial evidence supported the findings of the Secretary. In my opinion it is not the role of our court to substitute its judgment for that of the Secretary. Simply put, that is what the majority has done here.

390 F.Supp. 1084, *affirmed sub nom. Norton v. Mathews*, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672.

**13.** Brief of Appellee at 17.

**14.** *Santiago v. Matthews*, 431 F.Supp. 1213, 1215 (E.D.N.Y.1977).

**15.** Even the regulations of the Social Security Administration recognize that "support" includes in addition to cash, such things as food, shelter, clothing and other ordinary and customary items for the maintenance of the person supported. 20 C.F.R. § 404.350(c).