Willie Mae HAMMONDS, for Israel
GREEN, Plaintiff,

v.

Otis R. BOWEN, Secretary of Health
and Human Services, Defendant.

No. 80 Civ. 2508 (RJW).

United States District Court,
S.D. New York.

Jan. 27, 1987.

Joan Magoolaghan, Yonkers, N.Y., for plaintiff; Eileen R. Kaufman, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Steven E. Obus, Asst. U.S. Atty., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is an action brought under section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), for judicial review of a final decision by the Secretary of Health and Human Services ("the Secretary") denying plaintiff's application for child's insurance benefits for her son Israel Green. Both plaintiff and defendant move for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons hereinafter stated, plaintiff's motion is granted and defendant's motion is denied.

## BACKGROUND

The claimant's mother, Ms. Willie Mae Hammonds, filed an application for child's insurance benefits with the Social Security Administration on March 7, 1977, on the account of her son's father Leon Kiett, who died January 8, 1976. The application was denied both initially and upon reconsideration. Plaintiff requested a hearing, which was held on August 13, 1979. The Administrative Law Judge ("ALJ") concluded on October 30, 1979, that plaintiff's child was not entitled to child's insurance benefits. The ALJ's decision became the Secretary's final decision when it was approved on February 29, 1980 by the Appeals Council. On May 2, 1980, plaintiff commenced an action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the Secretary's determination.

This Court, by memorandum decision dated March 13, 1981, remanded the matter to the Secretary for a clearer articulation of the findings upon which the Secretary's determination was based. *Hammonds v. Schweiker*, No. 80–2508, Memorandum at 3 (S.D.N.Y. March 13, 1981). Pursuant to this Court's order, the Appeals Council, on April 15, 1981, vacated its denial and remanded the case for a further hearing. The hearing was held before an ALJ on June 10, 1981. On July 20, 1981, the ALJ issued a Recommended Decision finding that plaintiff's child was entitled to child's insurance benefits. The Appeals Council rejected the ALJ's decision on September 23, 1981 and found that plaintiff's child was not entitled to child's insurance benefits because the deceased wage earner upon whose account the child was claiming benefits was neither "living with [n]or contributing to the support of" the child within the meaning of 42 U.S.C. § 416(h)(3)(C)(ii).

In December of 1981, the parties cross-moved for judgment on the pleadings. By opinion dated March 30, 1982, this Court again remanded the case to the Secretary. While concluding there was substantial evidence to support the Secretary's finding that plaintiff's child was not living with the decedent at the time of his death, the Court

held there was not "even a scintilla of evidence" to contradict plaintiff's testimony that decedent was making contributions that were both commensurate with his ability to make support payments and important to meeting plaintiff's child's needs. *Hammonds v. Schweiker*, 535 F.Supp. 276, 279 (S.D.N.Y.1982).

After supplementing the record with evidence of Mr. Kiett's annual income from 1968 to 1976, the Appeals Council reconsidered plaintiff's claim and again denied plaintiff's application for benefits by decision dated July 30, 1982. The Council found the contributions made by Mr. Kiett were neither important in meeting Green's needs nor commensurate with Kiett's ability to pay. Plaintiff sought review in this Court.

By Memorandum Decision dated September 12, 1984, this Court granted plaintiff's motion for judgment on the pleadings in part and remanded the case to the Secretary for the third time, observing that the Secretary's treatment of the case upon remand had been both "puzzling and dismaying." *Hammonds v. Heckler*, No. 80–2508, Memorandum at 2 (S.D.N.Y. September 12, 1984). The most glaring inadequacy noted by the Court was the Appeals Council's failure to provide plaintiff with a reasonable opportunity to present evidence or be heard. Thus, the Court ordered an evidentiary remand. In particular, the Court remanded for further evidence on the issues of whether Mr. Kiett's support was important to meeting plaintiff's child's needs and whether such support was commensurate with Kiett's ability to pay. *Id.* at 2.

In accordance with the court's decision on May 7, 1985, a third hearing was held. On May 22, 1985, the ALJ issued a recommended decision in which he specifically found that Mr. Kiett made regular contributions to plaintiff's child in an amount commensurate with the wage earner's ability and the needs of the child. The ALJ accordingly concluded that plaintiff's child was entitled to receive child's insurance benefits. However, the Appeals Council rejected the ALJ's opinion and instead held that plaintiff's child was not entitled to benefits because the deceased wage earner's contributions to the child's support were neither commensurate with his ability to pay nor a material factor in the child's support.

The decision of the Appeals Council constitutes the final decision of the Secretary. It is this final decision that is currently under review by this Court.

## DISCUSSION

The only issue remaining in this case is whether or not Mr. Kiett's contributions to his son's support satisfy the statutory standard contained in Section 216(h)(3)(C)(ii) of the Social Security Act, 42 U.S.C. § 416(h)(3)(C)(ii). This Court recognizes that its review of the Secretary's determination that plaintiff's child is not entitled to child's insurance benefits is limited to whether the ALJ applied proper legal principles and made findings of fact that are supported by substantial evidence. 42 U.S.C. § 405(g); *see Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Hammonds v. Schweiker, supra*, 535 F.Supp. at 277. "Substantial Evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). *See generally Parker v. Harris*, 626 F.2d 225, 230–32 (2d Cir.1980).

Under 42 U.S.C. § 416(h)(3)(C)(ii), an applicant may be deemed to be a child of an insured individual if the insured individual "is shown by evidence satisfactory to the Secretary to have been the mother or father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."[1] In this

---

**1.** The Supreme Court upheld the constitutionali-    ty of the provision in *Mathews v. Lucas*, 427

case, there is no dispute that Leon Kiett was the natural father of plaintiff's child, Israel Green, and that Leon Kiett at the time of his death was not living with his son. Therefore, the only question which remains is whether Mr. Kiett was contributing sufficient support to his child to render the child eligible for benefits under Section 416(h)(3)(C)(ii).

■■■■ The Social Security Act is remedial and its humanitarian aims necessitate that it be construed broadly and applied liberally. *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir.1975). The primary purpose of the sections of the Act at issue here is to provide support to children who have lost either the actual support of an insured parent or the anticipated support which that parent would have expected to furnish had his death not intervened. *Jimenez v. Weinberger*, 417 U.S. 628, 634, 94 S.Ct. 2496, 2500–01, 41 L.Ed.2d 363 (1974). Accordingly, the terms of the Act requiring a potential claimant to show dependency should not be construed in such a manner as to withhold benefits in marginal cases. *Adams v. Weinberger, supra,* 521 F.2d at 659. However, Congress' desire to provide for children who have lost support is checked by qualifying sections of the statute which are applied by the Secretary to sift out and reject "spurious" claims.[2] *Id.* With this background in mind, this Court must determine whether plaintiff's child qualifies for benefits.

The statute is silent on the issue of the required amount of support. It contains no language suggesting how much or how often the father must contribute support to render his child eligible for survivor benefits.[3]

In implementing 42 U.S.C. § 416(h)(3)(C)(ii), the Secretary has promulgated the following regulation:

The insured makes a contribution for your support if the following conditions are met:

(1) The insured gives some of his or her own cash or goods to help support you. Support includes food, shelter, routine medical care, and other ordinary and customary items needed for your maintenance. The value of any goods the insured contributes is the same as the cost of the goods when he or she gave them for your support. If the insured provides services for you that would otherwise have to be paid for, the cash value of his or her services may be considered a contribution for your support. An example of this would be work the insured does to repair your home. The insured person is making a contribution for your support if you receive an allotment, allowance, or benefit based upon his or her military pay, veterans' pension or compensation, or social security earnings. (2) *Contributions must be made regularly and must be large enough to*

---

U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). *See Parsons v. Health and Human Services,* 762 F.2d 1188, 1190 (4th Cir.1985).

**2.** The Second Circuit has observed that Congress was concerned with two types of spurious claims. The first and most serious type are claims by individuals who in reality are not children of the insured wage earner. This type of claim is clearly not applicable to the present case where it is undisputed that Leon Kiett is Israel Green's father. The second type of spurious claim feared by Congress is by children who have no financial interest in their father's death but for the possible windfall in obtaining insurance benefits. The Second Circuit has noted with regard to this latter type of claim that Congress' fear of an onslaught of such claims was "apparently not so overwhelming." *Adams*

*v. Weinberger,* 521 F.2d 656, 660 n. 7 (2d Cir. 1975). This is because the statutory requirement of dependency is presumed away in most instances. Significant numbers of children who qualify for benefits under 42 U.S.C. sections 402(d)(3) and 416(h)(3)(C)(i) receive more in benefits than they have lost by their parent's death. Notwithstanding this fact, these children are conclusively presumed to have been dependent with any showing of loss. *Id.*

**3.** In *Santiago v. Mathews,* 431 F.Supp. 1213 (E.D.N.Y.1977), the court found small irregular payments ranging from ten to fifty dollars every two, three or four months, and totaling less than $300 per year, sufficient to be important to the support of the child. Accordingly, the Court reversed the Secretary and, without a remand, awarded benefits.

*meet an important part of your ordinary living costs.* Ordinary living costs are the costs for your food, shelter, routine medical care, and similar necessities. If the insured person only provides gifts or donations once in a while for special purposes, they will not be considered contributions for your support. Although the insured's contributions must be made on a regular basis, temporary interruptions caused by circumstances beyond the insured person's control, such as illness or unemployment, will be disregarded unless during this interruption someone else takes over responsibility for supporting you on a permanent basis.

20 C.F.R. § 404.366(a) (1984) (emphasis added).

A number of courts have found that the standard set by this regulation is inappropriate in cases involving illegitimate posthumous births. *See e.g., Adams v. Weinberger, supra,* 521 F.2d at 660; *Parsons for Bryant v. Health and Human Services,* 762 F.2d 1188, 1191 (4th Cir.1985); *Doran v. Schweiker,* 681 F.2d 605, 608 (9th Cir.1982). The Sixth Circuit has characterized the Secretary's test as "ludicrous" even when not applied to posthumous births:

> Obviously, continuously regular and substantial contribution is a just standard when the wage earner's income is regular and substantial. But where the income of a wage earner lacks continuity and substantiality and contributions are nevertheless given, a different criterion should be applied. Where a wage earner is poor and earns an irregular income, it is ludicrous to require regular and substantial payments to his children born out of wedlock or not. The wage-earner is barely supporting himself. Instead, attention should be focused on whether the contributions that were made to the support of his children were important to them given their needs and the wage earner's economic circumstances and ability to support. . . .

The lack of economic well-being or regular income does not eliminate the statutory requirement of "contribution." However, where the resources of the wage earner are scarce and the contributions to his children important to them, the statutory requirements can be satisfied. We emphasize that the periodic contributions were made to the wage earner's own children albeit born out of wedlock. The children should not be denied benefits because the wage earner could only afford small irregular payments.

*Boyland v. Califano,* 633 F.2d 430, 434 (6th Cir.1980). A number of other courts have taken a similar view finding that the Secretary should consider the financial situation of the father and the economic circumstances of the child in determining whether a father is "contributing to the support" of the child. *See e.g. Santiago v. Mathews,* 431 F.Supp. 1213, 1215 (E.D.N.Y. 1977); *Jones v. Harris,* 629 F.2d 334, 336 (4th Cir.1980) (test of substantiality of contribution cannot be applied in abstract because loss of small, regular contribution to a poor family would cause the economic dislocation the Act seeks to prevent); *Parker v. Schweiker,* 673 F.2d 160, 163 (6th Cir.1982) (support requirement "must be evaluated in light of the father and child's actual circumstances."); *Childress v. Secretary of Health and Human Services,* 679 F.2d 623, 629 (6th Cir.1982) (same); *Carter for Carter v. Secretary of Health and Human Services,* 625 F.Supp. 281 (E.D.Mich.1985) (to the extent Secretary's regulation is inconsistent with Sixth Circuit case law, the regulation must yield).

Insofar as the Second Circuit has not ruled on this precise issue, this Court has sought guidance from the other Circuits. After examining the law in other circuits, this Court is persuaded by the reasoning of the Fourth and Sixth Circuits and will therefore adopt their liberal standard, interpreting the regulation in light of the actual circumstances of the parent and child. As noted previously by this Court in *Hammonds v. Schweiker, supra,* 535 F.Supp. at 278, the question of whether an

insured individual was, at the time of his or her death, contributing to a child's support "is to be answered by comparing the amount and frequency of the insured individual's contributions with the insured individual's income and with the income of the family in which the claimant then resided." This Court finds that the contribution-to-support requirement is satisfied as long as the insured individual's contributions (1) were commensurate with his or her ability to make support payments and (2) were important to meeting the child's needs.[4] *Id.* at 279 (citing *Boyland v. California, supra,* 633 F.2d at 433–34). Applying this standard to the instant case, the Court is firmly convinced that the Secretary's determination to deny Israel Green child insurance benefits is not based upon substantial evidence.

The Secretary rested his decision not to grant child's insurance benefits to Israel Green on three basic factors. Initially, the Secretary concluded that plaintiff's testimony was not credible because claimant did not provide the welfare department with Mr. Kiett's address. Secondly, the Secretary concluded that Mr. Kiett had made no payments during the eight month period prior to his death, despite the fact that Mr. Kiett had earned more that year than ever before. Finally, the Secretary concluded that Mr. Kiett gave his son "next to nothing" in terms of support and this was not commensurate with his ability to pay. Examining the record, this Court finds that none of these conclusions is supported by substantial evidence.

In his decision, the Secretary stressed that it was necessary to consider the credibility of the claimant's testimony because, in remanding the case, this Court stated: "Certainly, the Secretary could have rejected [plaintiff's] testimony if, upon an analysis of the dollar value of Kiett's contributions relative to the dollar amount of Israel Green's needs and the dollar amount of the other resources available to meet these needs, he concluded that her testimony was not credible." *Hammonds v. Schweiker, supra,* 535 F.Supp. at 279. Rather than performing this financial analysis, the Secretary decided to attempt to independently discredit plaintiff's testimony. The Secretary observed that plaintiff's statement to the welfare department that she did not know Mr. Kiett's address was, in his opinion, "not a result of forgetfulness; rather, it was either a result of fabrication or it was the truth. If it was the truth, it reflects that the claimant did not have the contact with the wage earner she now alleges. If it was a fabrication, then it reflects adversely on her testimony altogether." Tr. at 154. Analyzing the record, this Court finds that there is no substantial evidence that Ms. Hammonds is not a credible witness and that her failure to provide the address of Mr. Kiett was due to anything other than forgetfulness. This conclusion is supported by her testimony before ALJ Portney where Ms. Hammonds stated that she couldn't remember Mr. Kiett's address or salary, although she had known these details in the past. Tr. at 187. In fact, Ms. Hammonds over a 14 year period repeatedly informed the Westchester County Department of Social Services

---

**4.** Under this prong of the contribution-to-support requirement, an insured individual who had a regular and substantial available income normally must have made regular and substantial contributions to the child's support before his or her contributions will be deemed to have been commensurate with his or her ability to make support payments. *Jones v. Harris,* 629 F.2d 334, 336 (4th Cir.1980); *Allen v. Califano,* 452 F.Supp. 205, 213 (D.Md.1978); *Norton v. Richardson,* 352 F.Supp. 596, 600–01 (D.Md. 1972), *vacated on other grounds sub nom., Norton v. Weinberger,* 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974). However, where the insured individual did not have a regular and

substantial available income, but still contributed something to the child's support, his or her contributions may, depending on the facts of the case, be deemed to have been commensurate with his or her ability to make support payments notwithstanding the fact that the contributions were relatively sporadic or relatively insubstantial. *Boyland v. Califano,* 633 F.2d 430, 434 (6th Cir.1980); *Santiago v. Mathews, supra,* 431 F.Supp. at 1215; *cf. Kohut v. Secretary of Health, Education and Welfare,* 664 F.2d 120, 122 (6th Cir.1981) (contribution-to-support requirement not satisfied where insured individual, at the time of his death, was not contributing at all to claimant's support).

that Leon Kiett was the father of Israel Green, that Mr. Kiett was living and employed in Philadelphia and that Mr. Kiett was contributing to Israel's support. *See* Affidavit of Haydee Buck, Tr. at 274. Moreover, it was partially on the basis of her consistent reports to the Social Services Department that ALJ Portney specifically found Ms. Hammonds to be a credible witness. He noted that nothing in the record existed to doubt her testimony. Because an ALJ's "conclusions of credibility carry considerable weight," *Barrett v. Secretary of Department of Health, Education and Welfare*, 581 F.Supp. 484, 491 (S.D.N.Y. 1984), and because the Court finds nothing in the record which calls Ms. Hammond's veracity into question, the Secretary's reliance on the fact that Ms. Hammond's did not provide an exact street address to the Department of Social Services does not constitute substantial evidence to support a decision to deny benefits.

■ The Secretary's second reason for denying benefits was that he interpreted plaintiff's testimony on August 13, 1979 as indicating that plaintiff had not received cash payments from Mr. Kiett for eight months prior to his death in January of 1976. Tr. at 38. Although plaintiff originally testified that the last time Mr. Kiett gave her money was in May of 1975, she subsequently testified that she was confused during her previous testimony and that in reality, Mr. Kiett's contributions continued up until "the time of his death." Tr. at 120–21. ALJ Portnoy also found that Mr. Kiett had provided support to Israel on a regular basis in 1975.

Even if Ms. Hammond's original testimony is accepted, there is substantial evidence to support the finding that Mr. Kiett made many indirect and non-cash contributions to Israel during 1975. Ms. Hammonds testified that often Mr. Kiett had his sisters give Ms. Hammonds money for Israel's support and he would reimburse them. Tr. at 120. In fact, shortly after Thanksgiving of 1975, Mr. Kiett had his sister given Ms. Hammonds $75 to buy Israel a snowsuit. Tr. at 124. The record also establishes that

up until his death Mr. Kiett was visiting Israel virtually every week even though he lived in Philadelphia and Israel lived in New York. On these frequent visits he would take his son to get his hair cut and give him spending money. Tr. at 39, 53. The record indicates that during these visits Mr. Kiett would buy food for his son. Tr. at 127. In the year prior to his death, Mr. Kiett also bought his son a bicycle and had given him a birthday present. Tr. at 58, 126. Inasmuch as there is substantial evidence to support the ALJ's finding that Mr. Kiett contributed to the support of his son during 1975 by giving indirect and direct cash payments, spending money, haircuts, clothing and food, and little evidence to the contrary, the Secretary's conclusion that Mr. Kiett did not contribute to his son's support during the latter portion of 1975 must be rejected as not being supported by substantial evidence.

■ The Secretary's final reason for denying benefits is his belief that Mr. Kiett gave "next to nothing" to Israel for support. The Secretary opined that only the cost of haircuts and cash furnished would constitute contributions to support and that since cash payments were not regularly furnished, the payments did not meet the requirements of the Act.

This Court takes issue with the Secretary's conclusion that only the cash and the haircuts constitute contributions to support. In addition to the cash and hair cuts, Mr. Kiett provided his son Israel with socks, undergarments, clothing (including a $75 snowsuit), toys, food, spending money, trips to Playland, and shelter (when his son visited him in Philadelphia). Tr. at 47, 53, 127. Mr. Kiett was a man of low income. The highest income he earned as a garbage collector was under $11,000 per year. The Court has searched the record in vain for even a scintilla of evidence that indicates Mr. Kiett's contributions were not commensurate with his ability to make support payments. On the contrary, Mrs. Hammonds specifically testified that Mr. Kiett provided monetary and other contributions to Israel to the extent he was able.

Q ... All right, on times such as those when he came to New York would he contribute money ... towards Israel's support when he was able to?

A Yes, if he had it, you know, he would give what he had.

Tr. at 46.

Statements by Mr. Kiett's sisters also indicate that Mr. Kiett's contributions were commensurate with his financial situation. Ms. Reaves stated in an affidavit that her brother had monetarily contributed to the support of Israel "consistently" over the years. Tr. at 75. She also testified that these contributions were what Mr. Kiett could afford.

Q All right, did your brother ever contribute to the support of Israel to your knowledge?

A Yes. When he—

Q Go ahead.

A When he would come over he would give her money for him. It wasn't like a lot of money but he would give what he had. And like she said, he was there and he would buy him little things. It wasn't no big things and all that but he did it.

Q So it's your impression that he contributed to the extent that he was capable of doing?

A Yes.

Q And do you know how long a period—for how long that lasted?

A Up until he died.

Tr. at 52–53. Ms. Ford, Mr. Kiett's other sister, stated in an affidavit that her brother "contributed to Israel's support to the extent he was able." Tr. at 74. In another affidavit Ms. Ford affirmed that her brother "contributed to Israel's support to the extent that he was financially able to do so. Based on his feelings and love for Israel,

he would have contributed more if he had it." Tr. at 276.

The record also reflects that Mr. Kiett's contributions to Israel were commensurate with the dollar amount of his available income. While no exact available figure can be calculated for Mr. Kiett because his financial records were missing the night he died, Tr. at 182, it is clear that Mr. Kiett had an extremely small available income considering the many expenses he incurred each month. Evidence in the record establishes that Mr. Kiett in the year of highest earnings made less than $11,000 before taxes. Ms. Hammonds testified that he had no bank account anywhere with additional resources. Tr. at 189. Mr. Kiett's fixed expenses included the cost of renting a room, the cost of maintaining a car, the cost of feeding himself and the cost of transportation to New York each week to visit Israel. Tr. at 183. Other evidence in the record indicates that Mr. Kiett had a number of other children, at least two of whom he supported. Tr. at 275–76. Moreover, Mr. Kiett contributed to the support of an alcoholic sister and her sons.

Based on this evidence, ALJ Greenidge found that Mr. Kiett's contributions were commensurate with his means. Tr. at 88. Similarly, ALJ Portney concluded that Mr. Kiett's made "regular and significant contributions to Israel based on his financial ability to do so." Tr. at 158.

As for the regularity of payments, it is clear that the payments Mr. Kiett made "were sporadic only in the sense that, although frequent over the years, they were not made at regular intervals." *Santiago v. Mathews, supra,* 431 F.Supp. at 1215. Because Mr. Kiett contributed twenty or thirty dollars whenever he was able up until he died, Tr. at 37–38, this Court finds his payments to be sufficiently regular considering his financial situation as to satisfy the requirements of the Act.[5]

5. Even if the payments were irregular and insubstantial that alone would not justify a conclusion that the requisite contribution did not exist. *See Hammonds v. Schweiker,* No. 80–2508, Memorandum at 3 (S.D.N.Y. March 13, 1981). Indeed, the Second Circuit in *Adams v.*

*Weinberger, supra,* 521 F.2d at 659, specifically determined that at least in the case of an illegitimate posthumous child, support need not be regular or substantial for a claimant to qualify for child's insurance benefits. *See also Boyland v. Califano, supra,* 633 F.2d at 434 (contribu-

This Court, therefore, concludes that there is no basis in the record for the Secretary's assertion that Mr. Kiett gave "next to nothing" to his son and that the contributions were not commensurate with his ability to pay. All of the evidence establishes that Mr. Kiett provided support to his son to the extent he was financially able. The Act cannot require that the parent provide more than he actually has available to give. Accordingly, this Court finds that the Secretary's third reason for denying benefits is not supported by substantial evidence.

Turning to the second prong of the contribution-to-support test, this Court finds that Mr. Kiett's contributions were commensurate with his son's needs. Ms. Hammonds so testified before ALJ Greenidge.

Q Over the course of many years since Israel [was born] until when Leon died on January 8th, 1976, were the contributions that he made for Israel's support, did they significantly help you in meeting Israel's needs?

A Yes.

Tr. at 127. There is no evidence on the record to contradict this statement. The Secretary may not, in determining whether the requirements of the Act have been satisfied, arbitrarily disregard the claimant's mother's testimony without giving any reason for doing so. *Hammonds v. Schweiker, supra*, 535 F.Supp. at 279. Moreover, Ms. Hammond's statement is certainly reasonable in light of the fact that she was receiving public assistance to help care for Israel. Tr. at 192. Under these circumstances, Mr. Kiett's contributions in cash, food, clothing, gifts, toys and haircuts were undoubtedly of significant assistance to Ms. Hammonds in providing for her son. Israel, himself, also testified that it was always clear to him that Mr. Kiett who visited him on weekends was his father and that Mr. Kiett provided him with haircuts, toys, gifts, spending money and entertainment. Tr. at 34–35. In addition, ALJ Greenidge, citing *Adams v. Weinberger, supra*, 521 F.2d 656 and *San-*

*tiago v. Mathews, supra*, 431 F.Supp. 1213, concluded Mr. Kiett's contributions were "commensurate with the need of the child at the time of the wage earner's death ..." and "satisfied the requirements of the Act." Tr. at 88. ALJ Portnoy similarly found Mr. Kiett's contributions to be commensurate with Israel's needs. Tr. at 158. There is thus no basis in the record for the Secretary's assertion that Mr. Kiett's contributions to Israel were not a material factor in the child's support.

## CONCLUSION

The Court finds that, considering the economic circumstances of Leon Kiett and his son Israel Green, Mr. Kiett contributed regularly and in an amount sufficient to meet an important part of Israel's ordinary living costs. Because Mr. Kiett's contributions were clearly commensurate with his ability to make support payments and were important to meeting his son's needs, the Secretary's decision is not based on substantial evidence and must be reversed. Accordingly, plaintiff's motion for judgment on the pleadings is granted and defendant's motion is denied. The Secretary's decision denying benefits is reversed and the case is remanded to the Secretary solely for a determination of benefits payable to Israel Green. The instant action is hereby dismissed, subject to being reopened by either party within a reasonable time following proceedings by the Secretary.

It is so ordered.

tions by poor individual need not be regular or substantial to satisfy requirements of the Act).